# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| KEVIN DAVIS, | |
|---|---|
| Plaintiff, | CIVIL ACTION NO. 1:18-CV-00804 |
| v. | (MEHALCHICK, M.J.) |
| JOHN WETZEL, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before this Court are two motions—a pleading filed by Plaintiff on March 23, 2013, construed by this Court as a Motion for Leave to Supplement the Complaint[1] (Doc. 42), and a motion to revoke Plaintiff's *in forma pauperis* status, filed by the Pennsylvania Department of Corrections ("DOC") Defendants on April 25, 2018. (Doc. 66). For the reasons stated herein, the Court will **DENY** both motions. (Doc. 42; Doc. 66).

### I.   BACKGROUND

Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), is a federal prisoner currently incarcerated within the DOC. (Doc. 5; Doc. 40). On October 30, 2017, Davis filed a *pro se* complaint in the United States District Court for the Western District of Pennsylvania. (Doc. 5). Davis also filed a motion to proceed *in forma pauperis* ("IFP") on October 27, 2017, which was granted by the Western District Court on October 30, 2017. (Doc. 2; Doc 4). At the time he filed the complaint, Davis was incarcerated at the State Correction Institution in Fayette, Pennsylvania ("SCI-Fayette"). (Doc. 5).

---

[1] Davis captioned his pleading as a "Motion for Permission to Include Retaliation in First Amended Complaint." (Doc. 42).

In the complaint,[2] Davis alleges that various Defendants violated his Eight Amendment Right to adequate medical care for his Hepatitis C. (Doc. 5, at 3). Specifically, Davis brings his cause of action against the following Defendants: John E. Wetzel, Secretary of the DOC; Paul Noel, along with three other members of the Hepatitis C Treatment Committee that are identified as "John Does"; Joseph Silva, the Director of Bureau of Health Care Services at the DOC; Nedra Grego, the Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious control nurse at SCI-Fayette; "John Doe, Chief Counsel"; and Correct Care Solutions, the company that contracts with the DOC to provide medical services.[3] Davis avers that the Hepatitis C Treatment Committee, which renders decisions as to whether an inmate qualifies for certain healthcare under the DOC's Hepatitis C policy, denied his request to be treated with an effective direct-acting antiviral ("DAA") medication called Harvoni. (Doc. 5, at 3-4). Davis purportedly requested Harvoni when his past course of Hepatitis C treatment[4] "did not work," and he subsequently "developed skin problems and lo[st] consciousness repeatedly." (Doc. 5, at 3-4). Davis's complaint further alleges that the DOC's "policies,

---

[2] The Court recognizes that Davis filed an amended complaint without leave of Court on May 5, 2018 (Doc. 69), which Defendant Correct Care Solution moved to dismiss on May 18, 2018. (Doc. 73). Notwithstanding the submissions in the amended complaint, the Court will proceed with its IFP analysis pursuant to the initial complaint. *See Cooley v. Zewe*, No. CIV.A. 11-99, 2012 WL 6677885, at *2 (W.D. Pa. Dec. 21, 2012) (citing *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 312-14 (3d Cir.2001)) ("The 'imminent danger' requirement is determined at the time the plaintiff files his original or initial complaint, rather than at the time an amended complaint is filed.").

[3] Wetzel, Noel, Silver, Grego, and Ranker are collectively referred to as the "DOC Defendants."

[4] The Court notes that Davis's complaint does not identify when he was diagnosed with Hepatitis C, when or where his previous treatment occurred, or what his past treatment entailed. (Doc. 5).

customs and practices prevent [him] from obtaining treatment for a[n] illness that he obtained while in the care, custody and control of the [DOC]." (Doc. 5, at 4).

In addition to his complaint, Davis filed a motion for preliminary injunction on December 1, 2017, which sought immediate Hepatitis C treatment with certain DAA medications. (Doc. 9). The preliminary injunction further demanded that the Defendants hire a dermatologist to treat Davis's "skin problem that developed due to the untreated Hepatitis C." (Doc. 9, at 2). With his Motion for Preliminary Injunction was still pending, Davis was transferred from SCI-Fayette to the State Correction Institution in Graterford, Pennsylvania ("SCI-Graterford"), where he currently is incarcerated. (Doc. 40). Thereafter, Davis filed a motion to include two acts of retaliation in his "First Amended Complaint."[5] (Doc. 42, at 1-2). However, upon the Defendants' motion, the Western District Court transferred Davis's cause of action to the Middle District of Pennsylvania on April 9, 2018.[6] (Doc. 46; Doc. 47). While his Motion to Include a Retaliation Claim (Doc. 42) remained pending before this Court, Davis filed an Amended Complaint on May 4, 2018. (Doc. 69).

---

[5] Pursuant to Rule 15(a) of the FEDERAL RULES OF CIVIL PROCEDURE, a Party may amend their pleading as a matter of course within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)...whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B).

[6] In addition to the Motion for Preliminary Injunction (Doc. 9) and Davis's motion for permission to include a claim for retaliation in his amended complaint (Doc. 42), the following motions were transferred and remain pending before this Court: a Motion to Dismiss Defendants Wetzel, Ranker, and Grego for lack of personal involvement, filed by the DOC Defendants (Doc. 21); and a Motion to Dismiss filed by Correct Care Solutions (Doc. 25) (Doc. 46).

On April 26, 2018, the DOC Defendants, through counsel, moved to revoke Davis's IFP status. (Doc. 66). Specifically, the DOC Defendants argue that Davis had accrued "three strikes" under 28 U.S.C. § 1915(g) of the Prisoner Litigation Reform Act ("PLRA"), and that he failed to allege he was under imminent danger at the time of filing the complaint. (Doc. 66, at 4). In support of this contention, the DOC Defendants rely on an Order issued in the case *Davis v. Lineberger, et al*, CA. No. 06-3557 (3d Cir. Aug. 9, 2007) on June 18, 2007 (the "June 18th Order"), wherein the Third Circuit Court of Appeals denied a previous request for Davis to proceed *in forma pauperis*. (Doc. 68, at 4). The June 18th Order identified three other federal civil actions filed by Davis that were previously dismissed pursuant to 28 U.S.C. § 1915(e). (Doc. 68, at 4). As a result, the DOC Defendants argue that Davis is barred from proceeding *in forma pauperis* in this case, and should have his IFP status revoked under 28 U.S.C. § 1915(g). (Doc. 66). On May 11, 2018, the Court received Davis's response to the motion. (Doc. 71). Therein, David did not appear to dispute the calculation of the three "strikes" against him, but rather claimed his IFP status should not be revoked pursuant to a narrow exception to the "three strikes rule" that applies when a prisoner is "under imminent danger of serious physical injury." (Doc. 71). Davis further argued that the DOC Defendants did not timely appeal his motion for IFP status, and that the original Judge in the Western District Court granted Davis's IFP application in light of the imminent danger exception. (Doc. 71, at 4-6). The DOC Defendants declined to file a reply brief in response to Davis's arguments.

## II. DISCUSSION

Davis is not barred from proceeding *in forma pauperis* pursuant to the "three strikes rule" set forth in 28 U.S.C. § 1915(g). Specifically, when liberally construed, he has demonstrated

that he was under imminent danger of serious physical injury at the time the complaint was filed.

   A. THE PLAINTIFF'S PRIOR "STRIKES"

The statutory text of the "three strikes rule" provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Third Circuit has discussed the appropriate standard for evaluating the accrual of "strikes" under 28 U.S.C. § 1915(g) as follows:

> [A] strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissal for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013).

The Supreme Court of the United States has further clarified that "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal." *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). Indeed, "[§ 1915(g)] does not treat a qualifying dismissal as provisional pending appeal, but rather speaks only to whether an action or appeal 'was dismissed'—a term that 'does not normally include subsequent appellate activity' and which 'describes ... an action taken by a single court, not ... a sequence of events involving multiple courts.'" *Parker v. Montgomery Cty. Corr. Facility/Bus. Office Manager*, 870 F.3d 144, 150 (3d Cir. 2017) (quoting *Coleman*, 135 S. Ct. at 1763).

The DOC Defendants argue that Davis accrued three strikes prior to filing the complaint in this action. (Doc. 67, at 4). Indeed, the DOC Defendants identified the June 18th Order, wherein the Third Circuit Court of Appeals found that Davis previously accrued the following three strikes:

1. *Davis v. Price*, No. 2:98-CV-01900 (W.D. Pa. Dec. 16, 1999) (dismissing case pursuant to the Prison Litigation Reform Act);

2. *Davis v. Price*, No. 2:98-CV-01900 (W.D. Pa. Dec. 16, 1999); No. 00-3012 (3d Cir. Mar. 13, 2001) (dismissing appeal pursuant to 1915(e)(2)(B));

3. *Davis v. Price*, No. 2:99-CV-01064 (W.D. Pa. Jan. 10, 2001); No. 01-1208 (dismissing appeal pursuant to 1915(e)(2)(B)(i)).

(Doc. 68).

As a result of the aforementioned cases, the Third Circuit Court of Appeals denied Davis's motion to proceed *in forma pauperis*. (Doc. 68).

Generally, "[i]t is the plaintiff's burden to prove [his] entitlement to IFP status." *Reid v. Ebbert*, No. 1:16-CV-01403, 2016 WL 6635931, at *2 (M.D. Pa. Nov. 8, 2016) (quoting *Robert v. Walls*, No. 11-234, 2011 WL 1599652, at *1 (W.D. Pa. Mar. 14, 2011)). Here, however, Davis does not appear to dispute that he is the plaintiff named in each of these three prior federal actions, or that these same actions constitute "strikes" for the purpose of § 1915(g). Thus, the Court concludes that Davis has accumulated three strikes under 28 U.S.C. § 1915(g), and that the three strikes accrued well before the instant action was filed on October 30, 2017. As such, Davis was not entitled to proceed in the instant action without prepayment of fees unless he was "under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g).

B. THE IMMINENT DANGER EXCEPTION

"The [PLRA] provides a limited exception to [the three strikes] rule when a prisoner is in 'imminent danger of serious physical injury,' which serves as a 'safety valve' to ensure that a

prisoner is not subject to serious injury due to his inability to pay a filing fee." *Brown v. Lyons*, 977 F. Supp. 2d 475, 481 (E.D. Pa. 2013). Allegations of imminent danger must be evaluated in accordance with the liberal pleading standard applicable to *pro se* litigants, although the Court need not credit "fantastic or delusional" allegations. *Gibbs v. Cross*, 160 F.3d 962, 966–67 (3d Cir. 1998). Moreover, "a prisoner claiming that []he is in imminent danger of serious physical harm must make specific and credible allegations to that effect." *Ball v. Famiglio*, 726 F.3d 448, 470 (3d Cir. 2013), *abrogated on other grounds by Parker v. Montgomery Cty. Corr. Facility/Bus. Office Manager*, 870 F.3d 144, 150 n. 9 (3d Cir. 2017) ("*Coleman [v. Tollefson*, 135 S. Ct. 1759 (2015)] abrogates *Ball* only insofar as *Ball* addressed the issue of tabulating strikes while an appeal is pending. *Ball*'s other holdings remain undisturbed."). "When considering whether imminent danger of physical injury has been alleged, courts may reject 'vague' or 'conclusory' allegations as insufficient to provide a basis for IFP status." *Lyons*, 977 F. Supp. 2d at 483 (citing *Ball*, 726 F.3d at 468).

"[A] prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the complaint is filed." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). "'Imminent' dangers are those dangers which are about to occur at any moment or are impending." *Abdul-Akbar*, 239 F.3d at 315. "Someone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent.'" *Abdul-Akbar*, 239 F.3d at 313. In addition, medical practices which "may prove detrimental to [a prisoner's] health over time…do not represent 'imminent dangers' which are 'about to occur at any moment or are impending.'" *Ball*, 726 F.3d at 468 (quoting *Abdul–Akbar*, 239 F.3d at 315). However, "even if an alleged

harm may in fact be 'impending,' it does not satisfy this exception if it does not threaten to cause 'serious physical injury.'" *Lyons*, 2013 WL 5629774, at *4 (citing 28 U.S.C. § 1915(g)).

Notwithstanding the foregoing, "§ 1915(g) is not a vehicle for determining the merits of a claim." *Brown v. Wolf*, 705 F. App'x 63, 66 (3d Cir. 2017); *see e.g., Tucker v. Pentrich*, 483 F. App'x 28, 30 (6th Cir. 2012) (finding a plaintiff "need[ ] only to assert allegations of imminent danger; he need not affirmatively prove those allegations at [the IFP] stage of litigation."); *Andrews v. Cervantes*, 493 F.3d 1047, 1057 (9th Cir. 2007) ("§ 1915(g) merely establishes a threshold procedural question and does not ask the court to evaluate the merits of the suit."). The exception to the three-strikes rule still applies "if the complaint makes a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing." *Andrews*, 493 F.3d at 1055. A lack of medical care may constitute "imminent danger" that falls under the narrow exception to the three-strikes rule. *Ball*, 726 F.3d at 467; *See e.g., Wolf*, 705 F. App'x at 66–67 (finding allegations that a prisoner was refused "*any* medical treatment for his Hepatitis C, if true, put[] [him] in imminent danger of serious physical injury"); *Lyons*, 977 F. Supp. 2d at 484–85 (finding specific allegations of inadequate treatment for a prisoner's Hepatitis-C and skin disease implicated the imminent danger exception).[7]

---

[7] Various Courts from sister circuits have also addressed this issue, albeit prior to the availability of DAA medications in 2013 and 2014. *See e.g., Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013) (holding that a "plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g), as incremental harm that culminates in a serious physical injury may present a danger equal to harm that results from an injury that occurs all at once."); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("Without adequate treatment, [the prisoner-plaintiff] will continue to suffer additional harm, if not death, from his Hepatitis C. That surely is sufficient to constitute 'imminent danger.'"); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding that the complaint, viewed as a whole, alleged imminent danger of more serious

Further, although not expressly defined under § 1915(g), the term "serious physical injury" has been construed to apply to diseases, such as Hepatitis C, that "could result in serious harm or even death [.]" *Ibrahim*, 463 F.3d at 6–7; *see also Wolf*, 705 F. App'x at 66 (noting that Hepatitis C is a serious, and potentially fatal, disease that may trigger the imminent danger exception). However, a dispute regarding the quality of a prisoner's treatment does not constitute a lack of medical care that falls under the imminent danger exception. *See Ball v.* 726 F.3d at 468 (allegations of disagreements about the quality of a prisoner's medical care are insufficient to show imminent danger); *Brown v. Beard (I)*, 492 F.Supp.2d 474, 478 (E.D. Pa. 2007) (same). Moreover, a prisoner's factual allegations must still be sufficiently specific so as to allow an inference that he or she suffers from a serious disease that has been left untreated by prison officials. *See e.g.*, *Brown v. Beard (II)*, No. CIV.08-0743, 2010 WL 1257967, at *4 (E.D. Pa. Mar. 25, 2010) (noting that while the plaintiff established that he suffered from chronic Hepatitis C "and that a prison is not the best place for a person with Hepatitis C," he failed to show how his health risks were "imminent."); *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 421-22 (D.C. Cir. 2009) (denying IFP status when prisoner alleged he required treatment for his Hepatitis B and C but failed to establish both the imminence and dangerousness of his condition when "he never [told the Court] when he asked for assistance, what kind of treatment he requested, who he asked, or who denied it[, and] he never even clearly state[d] that medical attention was actually denied.").

---

afflictions arising from the prisoner's HIV and Hepatitis C when the prison doctor ceased his prescribed treatment).

In the instant case, Davis did not specifically allege that he was under imminent danger upon filing the complaint.[8] (Doc. 5). Thus, the DOC Defendants argue that Davis has failed to invoke the imminent danger exception. (Doc. 67, at 3). In response, Davis argues that the language of § 1915 does not mandate the express use of the term "imminent danger," and that *pro se* litigants are not held to the same pleading standards as attorneys. (Doc. 71, at 4-5). Davis also submits that by virtue of the fact he was previously granted IFP status, the Western District Court liberally construed his complaint to find that he was under imminent danger. (Doc. 71, at 4). Upon review of the Order granting IFP status, however, it is evident that the Western District Court did not refer to Davis's prior three strikes upon rendering its decision. (Doc. 4). Thus, Davis's argument regarding the past consideration of this same issue is without merit, as the imminent danger exception to the three-strikes rule was not previously addressed.

Davis's complaint does allege, however, that he requested to be treated with DAA medication on January 31, 2017. (Doc. 5, at 3). On May 31, 2017, the DOC's Hepatitis C Committee "made the decision not to treat [or] give [him] the [DAA] medications that cure Hepatitis C." (Doc. 5, at 4). As a result of this decision, Davis claims that his deprivation of medical care remains ongoing, and that he "will suffer from Hepatitis C related complications, continued liver scarring and damage progressing into cirrhosis, and other conditions." (Doc. 5, at 3-4). Davis further avers that he previously received treatment for his Hepatitis C, which was unsuccessful. (Doc. 5, at 3). Since his previous treatment, Davis has allegedly suffered from fibrosis, or scarring of the liver, skin-related problems, and repeated loss of consciousness. (Doc.

---

[8] The Court also notes that Davis's Motion for Preliminary Injunction (Doc. 9; Doc. 10) and Amended Complaint (Doc. 69) do not specifically allege imminent danger.

5, at 3-4, 7). Thus, when liberally construed, it appears that Davis submits the May 31st denial of curative DAA medications placed him at risk of developing other afflictions related to the progression of chronic Hepatitis C[9]. (Doc. 5).

Although not precedential, the Court is further persuaded and guided by the reasoning set forth in *Brown v. Wolf*, 705 F. App'x 63 (3d Cir. 2017). In *Wolf*, the prisoner-plaintiff sought to invoke the imminent danger exception to the three-strikes rule when he alleged that the prison denied him adequate treatment for his Hepatitis C. 705 F. App'x at 66. Although the prisoner had previously refused treatment because of the associated side effects,[10] his subsequent attempts to obtain treatment were denied due to "non-medical reasons." *Wolf*, 705 F. App'x at 66. As a result, the plaintiff claimed to suffer from intensified Hepatitis C symptoms, including recurring stomach and liver pain, progressive weight loss, and flu-like symptoms. *Wolf*, 705 F. App'x at 66-67. The Court found that these were "not trivial symptoms," and that the refusal of

---

[9] Notably, Davis acknowledges that the DOC Defendants chose "a course of monitoring" his Hepatitis C instead of providing him with Harvoni, as allegedly requested. The Court also acknowledges that a number of Davis's factual allegations appear to come from the opinion in *Abu-Jamal v. Wetzel*, which involved a deliberate indifference to a serious medical need claim. No. 3:16-CV-2000, 2017 WL 34700, at *1 (M.D. Pa. Jan. 3, 2017), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), and *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017). In *Abu-Jamal*, the Court found that the prisoner-plaintiff's motion for a preliminary injunction had demonstrated a reasonable likelihood of success on the merits when the prison's policy of monitoring prisoners with Hepatitis C, instead of providing them with DAA mediations, only allowed inmates to receive DAA treatment when their condition reached a certain level of deterioration. 2017 WL 34700, at *14. Notwithstanding any similarity between *Abu-Jamal* and the merits of Davis's underlying claims, however, *Abu-Jamal* did not address any allegations of imminent danger so as to evade the application of the PLRA's three-strikes rule.

[10] The medical care in *Wolf* related to Interferon treatment for Hepatitis C, which existed before the advent of DAA-Medications like Harvoni.

*any* medical treatment for Hepatitis C met the imminent danger standard. *Wolf*, 705 F. App'x at 67; *See also Bernier v. Koenigsmann*, No. 917-CV-254 DNHATB, 2017 WL 8230891, at *1 (N.D. N.Y. Nov. 22, 2017), *report and recommendation adopted*, No. 917-CV-254 DNHATB, 2018 WL 1355259 (N.D. N.Y. Mar. 15, 2018) (Holding that the prisoner-plaintiff met the imminent danger exception when he alleged that the DOC refused to provide him with previously-recommended DAA Medications for his Hepatitis C, which was the only treatment that would prevent or delay his related deterioration. "Such allegations, construed liberally, are more than a mere disagreement about the type of treatment being provided. They allege a total absence of adequate treatment, and thus an imminent danger of physical injury."). Other circuits have also found that the failure to treat chronic Hepatitis C may fall under the imminent danger exception, "as incremental harm that culminates in a serious physical injury may present a danger equal to harm that results from an injury that occurs all at once." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013).

When liberally construed, Davis's complaint alleges he was under imminent danger of serious physical injury. (Doc. 5, at 4). Notwithstanding the fact that Davis is under a "course of monitoring" for his Hepatitis C, he alleges that he is being denied curative medications, and that the DOC Defendants have otherwise "made the decision not to treat [him]" for his condition that will ultimately worsen. (Doc. 5, at 4). Such harm is thus incremental, as it will allegedly culminate in other serious afflictions related to the progression of untreated Hepatitis C. *Vandiver*, 727 F.3d at 587. Accordingly, in resolution of this threshold procedural question,[11]

---

[11] The Court reiterates that it expresses no opinion as to the underlying merits of Davis's Eighth Amendment claims. *See Wolf*, 705 F. App'x at 67; *see also Sanders v. Beard*, No. 3:09-CV-

the Court is persuaded that Davis has alleged sufficient facts to demonstrate that he was under imminent danger as a result of the refusal to provide him with medicinal treatment for his Hepatitis C. *See Wolf*, 705 F. App'x at 67; *Brown (II)*, 2010 WL 1257967, at *4. Because Davis has shown that the dangers he faces are imminent, this Court will affirm his *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g).

### III. PLAINTIFF'S MOTION TO SUPPLEMENT THE COMPLAINT

The Court next turns to Davis's "Motion for Permission to Include Retaliation in First Amended Complaint," filed while the action was still pending before the Western District Court. (Doc. 42). In this motion, Davis seeks to add an additional count to the compliant, based on two alleged acts of retaliation that occurred after he initiated the action.[12] (Doc. 42). Specifically, Davis alleges that the first incident occurred on January 20, 2018, when a Property Officer at SCI-Fayette damaged his personal property. (Doc. 42, at 1; Doc. 42-1, at 2). The second incident occurred on March 13, 2018, and relates to another Property Officer's alleged tampering with and theft of Davis's personal property upon his transfer from SCI-Fayette to

---

01384, 2010 WL 11492350, at *6 (M.D. Pa. Aug. 12, 2010), *aff'd in part sub nom. Sanders v. Sec'y Pennsylvania Dep't of Corr.*, 602 F. App'x 54 (3d Cir. 2015) ("The issue of whether plaintiff…was in imminent danger of serious physical injury at the time he filed the complaint is a different issue from that of whether the plaintiffs have a reasonable probability of success on the merits of their claims or whether the plaintiffs will be irreparably injured if preliminary injunctive relief is not granted.").

[12] Although the exact acts of retaliation are not described in the body of Davis's motion, he refers the Court to an attached "Appendix." (Doc. 42; Doc. 42-1). Therein, Davis includes various documents that involve to two grievances he filed at SCI-Fayette and SCI-Graterford. (Doc. 42-1). In light of Davis's *pro se* status, the Court will liberally construe the facts set forth in the grievances as forming the basis of his alleged retaliation claims. The Court notes, however, that these grievance documents do not indicate that the acts Davis complained of were in retaliation for pursuing the instant action. (Doc. 42-1).

- 13 -

SCI-Graterford. (Doc. 42-1, at 12-13). Davis alleges that both acts were in retaliation for him pursuing his Eighth Amendment claim in the instant action. (Doc. 42, at 1-2).

As Davis attempts to add a new claim[13] relating to conduct that occurred after he filed the original complaint, the Court will construe this filing as a motion to supplement, as opposed to a motion to amend, his complaint.[14] Rule 15(d) of the FEDERAL RULES OF CIVIL PROCEDURE governs motions to supplement, and states in pertinent part:

> "On a motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Fed. R. Civ. P. 15(d).

As with motions to amend, whether to grant a motion to supplement rests with the sound discretion of the district court. *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988) (citing *Bates v. Western Electric*, 420 F.Supp. 521, 525 (E.D. Pa. 1976)). Upon making this determination, the Court may consider "the promotion of a justiciable disposition of the case, the delay or inconvenience the allowance of such a pleading will cause, and the prejudice to the

---

[13] As written, it is unclear from the motion whether Davis seeks to add new parties to the complaint, as he does not name any additional proposed Defendants. (Doc. 42).

[14] A supplemental complaint "refers to events that occurred after the original pleading was filed," as opposed to an amended complaint which "covers matters that occurred before the filing of the original pleading but were overlooked at the time." *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1188-89 (3d Cir. 1979); *see also Wright and Miller's Fed. Prac. & Proc. Civ.* § 1504 (3d ed.) ("[Supplemental pleadings] deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings."). Unlike a motion to amend, which may be made as a matter of course in the circumstances articulated under Fed. R. Civ. P. 15(a), a motion to supplement requires leave of Court. *See* Fed. R. Civ. P. 15(d); *see also Wright and Miller's Fed. Prac. & Proc. Civ.* § 1504 (3d ed.) ("Under Rule 15(a)(1) certain amendments may be made as a matter of course within stated time periods, whereas all supplemental pleadings require leave of court under Rule 15(d).").

rights of the parties to the action." *Nottingham*, 709 F. Supp. at 544. However, a Court needn't grant leave to supplement when the motion "relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts ...." *Deen-Mitchell v. Lappin*, No. CIV.A. 1:11-1902, 2012 WL 74900, at *4 (M.D. Pa. Jan. 10, 2012) (citing *Nottingham*, 709 F.Supp. at 544).

The Court has reviewed Davis's motion, construing it liberally. *See generally Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2002) ("Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading."). Even under this liberal standard, however, the Court finds that granting Davis's motion would not be justified in this case. Specifically, a review of his motion, in addition to the grievance documents Davis attached thereto, reveals that the only relation between the retaliatory events and the original complaint is a conclusory allegation that the Defendants acted "in retaliation for seeking redress for the Eighth Amendment Violation."[15] (Doc. 42, at 2). However, the circumstances underlying the retaliation claim involves conduct entirely separate from the alleged Eighth Amendment cause of action, and indirectly relates to the original complaint. *Nottingham*, 709 F. Supp. at 544. It is also of some significance to this Court that a number of Davis's previous civil actions, which resulted in dismissal and the accumulation of "strikes," included similar allegations of retaliation by Property Officers who were involved in the destruction, loss, or confiscation of Davis's personal property. *See Davis v. Price*, No. 2:98-CV-01900 (W.D. Pa. Dec. 16, 1999); *Davis v. Price*, No. 2:99-CV-01064 (W.D.

---

[15] With respect to the second alleged incident of retaliation, Davis's grievance indicates that he informed the Property Officer, Sergeant Currant, "that [he] had three cases pending," but that the Sergeant "[did]n't care..." (Doc. 42-1, at 12-13). This statement, however, fails to identify or implicate the instant action with any specificity.

Pa. Jan. 10, 2001). Thus, in its discretion, the Court will DENY Davis's motion to supplement the complaint.

The Court further acknowledges the guidance set forth in *Brown v. Lyons*, 977 F. Supp. 2d 475, 484-85 (E.D. Pa. 2013), which involved a prisoner-plaintiff who sufficiently alleged he was under imminent danger upon filing his original complaint. Thereafter, the plaintiff filed an amended complaint which raised a litany of new claims, including inadequate treatment for his Hepatitis C. *Lyons*, 977 F. Supp. 2d 475, 484-85. Although the Court granted IFP status with respect to the claims that met the imminent danger exception, it declined to extend IFP status to the newly alleged claims that did not. *Lyons*, 977 F. Supp. 2d at 482–83. In support of this decision, the Court reasoned:

> The imminent danger exception [to the "three-strikes rule"]…creates a narrow opening for a particular type of claim; it does not give prisoners…a license to swamp the court with claims whenever they successfully state a claim of imminent danger. *Cf. Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (concluding that the exception's "unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger," not to allow such a litigant to "file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy"). Indeed, allowing all of [plaintiff's newly alleged] claims [in the amended complaint] to accompany an allegation of imminent danger would have the effect of undoing Congress's intent in enacting the PLRA, which was to "ensur[e] that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)…

*Lyons*, 977 F. Supp. at 481–82.

Here, Davis's new allegations do not involve any threats of imminent danger. (Doc. 42). Indeed, the retaliatory acts he complains of relate to past incidents of property damage, and not impending risks of serious bodily harm. (Doc. 42, at 2; Doc. 42-1, at 2, 12-13). Further, the proposed retaliation claim lacks an apparent connection with the imminent danger alleged by

Davis in his Eighth Amendment claim, as discussed *supra*. *See Ball v. Hummel*, 577 F. App'x 96, 98 n. 1 (3d Cir. 2014) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir.2009)) ("To fulfill the 'imminent danger' requirements, [a plaintiff] must demonstrate an adequate nexus between the claims [s]he seeks to pursue and the 'imminent danger []he alleges."). Thus, even if the alleged acts of retaliation related more directly to the claims in Davis's original complaint, it fails to comport with the imminent danger exception to the "three strikes rule." As such, given Davis's history of filing frivolous lawsuits, the Court also notes that he has lost the privilege of invoking IFP status in relation to his proposed claim of retaliation.

For the aforementioned reasons, Davis's Motion to Supplement the Complaint with a Retaliation Claim is **DENIED.**

### IV. PLAINTIFF'S AMENDED COMPLAINT

The Court finally considers the Amended Complaint filed by Davis on May 4, 2018. (Doc. 69). Notably, Davis filed the Amended Complaint after the action had been transferred to the Middle District of Pennsylvania, but before his Motion to Supplement (Doc. 42) had been ruled upon. In the Amended Complaint, Davis asserted the proposed claim of retaliation found in his Motion to Supplement. (Doc. 42; Doc. 69). Davis's amended complaint additionally raised new facts in relation to his deliberate indifference claim brought under the Eighth Amendment. (Doc. 69). To the extent Davis sought to amend[16] or supplement the original

---

[16] Rule 15(a) of the FEDERAL RULES OF CIVIL PROCEDURE states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when

complaint, such efforts require leave of Court. The Court will **DISMISS** Davis's Amended Complaint as improperly filed, without prejudice to him seeking leave to amend his Eight Amendment Claim in accordance with the directives of this opinion, Rule 15 of the Federal Rules of Civil Procedure, and the Local Rules of this Court.

V. CONCLUSION

Based on the foregoing, the DOC Defendant's Motion to revoke Davis's *in forma pauperis* status (Doc. 66) and Davis's Motion to Supplement the Complaint (Doc. 42) are **DENIED.**

An appropriate Order follows.

BY THE COURT:

Dated: June 13, 2018

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the DOC Defendants filed a Motion to Dismiss on January 16, 2018 in connection with their Motion to Transfer Case to the Middle District of Pennsylvania (Doc. 21), and the Defendant Correct Care Solutions filed a Motion to Dismiss on January 22, 2018 (Doc. 25). Thus, Davis was not entitled to amend his complaint as a matter of course, as his filing on May 4, 2018 (Doc. 69) was well past the enumerated time frames in Fed. R. Civ. P. 15(a)(1). Moreover, it does not appear that Davis obtained the consent of all the Defendants before filing the Amended Complaint. (Doc. 69).