UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN DAVIS,

    Plaintiff,

v.

JOHN WETZEL, et al.,

    Defendants.

CIVIL ACTION NO. 1:18-CV-00804

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

Presently before this Court are two separate motions to dismiss, filed respectively by Defendant Correct Care Solutions, LLC ("CCS") on January 22, 2018, and the Pennsylvania Department of Corrections ("DOC") Defendants on January 16, 2018. (Doc. 50; Doc. 56). The Parties have filed all relevant briefs, and the matter is ripe for review. (Doc. 51; Doc. 52; Doc.53; Doc. 57; Doc. 58; Doc. 59; Doc. 60). For the reasons stated herein, the Court will **GRANT** both motions.

### I. BACKGROUND

Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), is a Hepatitis-C positive prisoner currently incarcerated at the State Correction Institution in Fayette, Pennsylvania ("SCI-Fayette").[1] (Doc. 5, at 1). On October 30, 2017, Davis filed a *pro se* complaint in the United States District Court for the Western District of Pennsylvania against the following

---

[1] At the time Davis filed the complaint, he was incarcerated at SCI-Fayette. (Doc. 5, at 1). On March 16, 2018, however, Davis informed the Court that he had been transferred to the State Correction Institution in Graterford, Pennsylvania ("SCI-Graterford") for a court appearance. (Doc. 40). The Court notes that, after having conducted its own search using the inmate locator tool on the DOC's website, Davis has since been transferred back to SCI-Fayette, where he presently remains incarcerated. *See* http://inmatelocator.cor.pa.gov.

Defendants: John E. Wetzel, Secretary of the DOC; Dr. Paul Noel, Chief of Clinical Services of the DOC's Bureau of Healthcare Services, along with three other members of the Hepatitis C Treatment Committee that are identified as "John Does"; Joseph Silva, Director of the DOC's Bureau of Health Care Services; Nedra Grego, Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious control nurse at SCI-Fayette; "John Doe, Chief Counsel"; and Correct Care Solutions, the company that contracts with the DOC to provide medical services. (Doc. 5, at 1-2).[2] (Doc. 5). Davis also filed a motion to proceed *in forma pauperis* ("IFP") on October 27, 2017, which was granted by the Western District Court on October 30, 2017. (Doc. 2; Doc 4). After a lengthy procedural history, the Western District Court transferred Davis's cause of action to the Middle District of Pennsylvania on April 9, 2018.[3] (Doc. 46; Doc. 47).

The events giving rise to the complaint stem from certain medical decisions and policies involving Davis' Hepatitis C treatment. Specifically, on January 31, 2017, Davis claims that he made a request to be treated with a curative direct-acting antiviral ("DAA") drug called Harvoni. (Doc. 5, at 3-4). Davis had previously been treated for Hepatitis C while incarcerated within the DOC, however asserts that the medication provided to him then "did not work," resulted in his repeated loss of consciousness, and caused him to develop a damaging skin

---

[2] Defendants Wetzel, Noel, Silva, Grego, and Ranker are collectively referred to as the "DOC Defendants."

[3] In addition to the two (2) motions to dismiss presently before the Court, the Western District Court additionally transferred a Motion for Preliminary Injunction filed by Davis on December 1, 2017, which remains pending. (Doc. 9; Doc. 48).

condition.[4] (Doc. 5, at 3). In response to his request, Defendant Ranker, an Infectious Control Nurse at SCI-Fayette, informed Davis that the DOC's Hepatitis C Committee made decisions regarding his treatment, and that he did not meet the criteria for receiving Harvoni under the DOC's Hepatitis C Policy. (Doc. 5, at 3-4). Davis subsequently filed a related prison grievance,[5] and received a reply from Defendant Grego, SCI-Fayette's Corrections Health Care Administrator ("CHCA"), that allegedly adopted Defendant Ranker's response without considering his past qualification for Hepatitis C treatment. (Doc. 5, at 6).

On May 31, 2017, in spite of federal case law that found the DOC's interim Hepatitis C protocol raised Eighth Amendment concerns,[6] the Hepatitis C Committee denied Davis's request for care. (Doc. 5, at 4). Davis states that the Committee based its decision on a policy that limited DAA treatment to prisoners that suffered from advanced symptoms, such as "vast fibrosis or cirrhosis." (Doc. 5, at 4). As a result of the Hepatitis C Committee's decision to monitor his condition instead of provide him with DAA medications, Davis, who allegedly already suffers from fibrosis of the liver, asserts he will continue to develop liver scarring and other complications related to the progression of his chronic Hepatitis C. (Doc. 5, at 4-5). Davis

---

[4] Davis further alludes that he contracted Hepatitis C while under "the care, custody, and control of the [DOC]." (Doc. 5, at 4). However, the complaint does not identify the date or year he was diagnosed with Hepatitis C, when his previous treatment occurred, or what his past treatment entailed. (Doc. 5).

[5] Davis identifies his grievance as #664288. (Doc. 5, at 6).

[6] Although not expressly alleged in the complaint, Davis presumably references the decision in *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *1 (M.D. Pa. Jan. 3, 2017), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), and *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017).

further argues that the Defendants maintain "policies, customs, and practices" that consciously disregard the medical risks associated with untreated Hepatitis C. (Doc. 5, at 5).

In his complaint, Davis advances a claim under 42 U.S.C. § 1983 against the named Defendants. (Doc. 5, at 1). When liberally construed, Davis asserts that the Defendants deprived him of his right to adequate medical care under the Eighth Amendment, as they consciously disregarded the serious risk to his health by denying him curative DAA medication. (Doc. 5, at 3). As for relief, Davis seeks to enjoin the use of the DOC's Hepatitis C Policy, have the requested curative medication be provided to him, and obtain immediate treatment for his Hepatitis-C related skin complication. (Doc. 5, at 6-7). Davis also seeks damages for the harm caused to his liver by refusing to administer Harvoni, and for aiding in implementing the allegedly unconstitutional Hepatitis C policy. (Doc. 5, at 7).

On January16, 2018, in conjunction with a motion to transfer venue from the Western District of Pennsylvania to the Middle District of Pennsylvania, the DOC Defendants filed a motion to dismiss Davis's claims against Defendants Wetzel, Ranker, and Grego for lack of personal involvement as required for actions brought under 42 U.S.C. § 1983. (Doc. 21; Doc. 56). Correct Care Solutions subsequently moved to dismiss Davis's complaint on January 22, 2018 for failure to state a claim under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE. (Doc. 25; Doc. 50). Both of these motions have been fully briefed and are now ripe for disposition. (Doc. 51; Doc. 52; Doc. 53; Doc. 54; Doc. 56; Doc. 57; Doc. 58).

II. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded

allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

#### A. CLAIMS ASSERTED AGAINST THE DOC DEFENDANTS

In their motion to dismiss, the DOC Defendants argue that Davis's claims against Defendant Wetzel, Ranker, and Grego are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 56; Doc. 57). Specifically, the DOC Defendants move to dismiss on the grounds that Davis has failed to allege Defendants Wetzel, Ranker, and Grego were personally involved in the alleged constitutional deprivations, as required for civil rights actions brought under 42 U.S.C. § 1983. (Doc. 57, at 8-10). Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### 1. Claims against Defendant Wetzel

The DOC Defendants first argue the claims against Defendant Wetzel must fail under Section 1983 for lack of personal involvement, as Davis merely attempts to impose *respondeat superior* liability. (Doc. 57, at 8). The Third Circuit has "consistently held that '[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.'" *Batts v. Giorla*, 550 F. App'x 110, 112 (3d Cir. 2013) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Padilla v. Beard,* No. CIV. 1:CV–06–0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006) ("[A]n allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability."). Here, the complaint broadly alleges that Defendant Wetzel is responsible for "everything that occurs" within the DOC, and that he oversees the Hepatitis C Committee's conduct. (Doc. 5, at 4). Such allegations, however, do not set forth a viable claim against Defendant Wetzel, as they premise liability based on the DOC position in which he is employed. *See Rode,* 845 F.2d at 1207.

The Court recognizes, however, that Davis's brief in opposition alleges for the first time that Defendant Wetzel is a member of the Hepatitis C Treatment Committee. (Doc. 58, at 1-2).

Davis further avers that Defendant Wetzel must "review, approve and sign each and every policy," which presumably included the Hepatitis C treatment protocol "that was used to deny [Davis's] treatment."[7] (Doc. 58, at 2; Doc. 58-1, at 9). Although it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," it appears that Davis attempts to state a supervisory liability claim[8] against Defendant Wetzel based on his alleged role in developing, approving or implementing the challenged Hepatitis C policy. *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)). Accordingly, all claims against Defendant Wetzel shall be **DIMISSED** without prejudice to Davis filing an amended complaint that clearly sets forth the basis of his Section 1983 claims against Defendant Wetzel.

---

[7] The Court notes that, as alleged, the specific Hepatitis C policy to which Davis refers is unclear. Indeed, given the vague allegations in the complaint, the Court cannot ascertain whether Davis challenges the same interim protocol as discussed in *Abu-Jamal*, or an updated version of the DOC's Hepatitis C policy.

[8] Under § 1983, a prison supervisor may be deemed personally liable under two, narrow theories of supervisory liability: "one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (alterations in original)). "[V]ague and speculative allegation[s] of custom, policy or practice are insufficient [to state a claim] under *Twombly* and *Iqbal*." *Lewis v. Wetzel*, 153 F.Supp.3d 678, 696 (M.D. Pa. 2015). Here, the brief in opposition seemingly aims to premise Defendant Wetzel's liability on the policy, practice, or custom theory. (Doc. 58; Doc. 58-1).

### 2. Claims against Defendants Ranker and Grego

The DOC Defendants next argue that all claims against Defendants Ranker and Grego are subject to dismissal, as Davis fails to plausibly allege they were personally involved in the purported Eighth Amendment violations. (Doc. 57, at 8). According to the DOC Defendants, Davis merely asserts that Defendant Ranker passed along the Hepatitis C Committee's policies and treatment determinations to him. (Doc. 57, at 9; Doc. 59, at 3). Similarly, the DOC Defendants argue that Davis's claims against Defendant Grego are solely predicated upon her unfavorable response to his grievance, wherein she informed him that the Hepatitis C Committee had determined he was ineligible for DAA treatment under the Hepatitis C policy. (Doc. 57, at 9; Doc. 59, at 3). The DOC Defendants thus emphasize that the complaint does not allege Defendants Ranker or Grego were responsible for the Hepatitis C Committee's treatment decisions. (Doc. 57, at 9). They further assert that Defendants Ranker and Grego, as non-medical professionals, were entitled to rely on the expertise of other medical staff members unless they had reason to believe such personnel were mistreating Davis. (Doc. 57, at 9).

The Third Circuit has held that if a prisoner is under the care of medical personnel, non-medical officials and healthcare administrators cannot be considered deliberately indifferent for failing to intervene in the medical treatment or respond directly to the prisoner's medical complaints. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (finding that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Gould v. Wetzel*, 547 F. App'x 129, 132 (3d Cir. 2013) (same). Hence, "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, ... and an administrator does not become responsible for the inmate's medical

treatment simply by virtue of reviewing an inmate grievance." Smith v. O'Boyle, 251 F.App'x 87, 89 (3d Cir. 2007). However, a viable Eighth Amendment deliberate indifference claim may arise if they have "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner . . . ." *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004).

Even when taken as true, the claims alleged in the complaint essentially attempt to impose liability on Defendants Ranker and Grego for informing Davis of the DOC's Hepatitis C Policy and the Hepatitis C Committee's related treatment determination. (Doc. 5, 4-5). Davis's brief in opposition, however, asserts that Defendants Ranker and Grego aided the Hepatitis C Committee by referring to and enforcing the allegedly unconstitutional Hepatitis C policy, and thus acquiesced in the denial of his medical treatment. (Doc. 58, at 2; Doc. 58-1, at 5; Doc. 60 at 2). The brief in opposition also claims, for the first time, that Defendants Ranker and Grego are both members of the Hepatitis C Committee that allegedly performed medical duties at the behest of the Committee. (Doc. 58, at 2; Doc. 58-1, at 5). Nonetheless, Davis does not plausibly allege that these Defendants had any authority to exercise medical judgment over his specific course of Hepatitis C related treatment, or that their response on behalf of the Hepatitis C Committee rose to the level of deliberate indifference. *See Smith*, 251 F.App'x at 89. Further, with respect to Defendant Grego, civil rights liability does not arise from the fact that she reviewed and responded unfavorably to Davis's grievance by reiterating the Hepatitis C' Committee's assessment. *See Durmer*, 991 F.2d at 69. Thus, Davis's allegations that Defendants Ranker and Grego, as non-physicians, failed to accommodate his medical request for Harvoni by communicating the DOC's Hepatitis C policy, without taking further action to influence the

Hepatitis C Committee's decision, do not state a viable Eighth Amendment claim for deliberate indifference under Section 1983.[9]

Accordingly, Davis's claims against Defendants Ranker and Grego shall be **DISMISSED** without prejudice.

### B. CLAIMS ASSERTED AGAINST DEFENDANT CORRECT CARE SOLUTIONS

In support of its motion to dismiss, Correct Care Solutions argues that Davis fails to state a cognizable claim against it under 42 U.S.C. § 1983. (Doc. 51, at 3-5). Specifically, Correct Care Solutions maintains that Davis does not assert any factual allegations against it in the complaint, and merely mentions Correct Care Solutions with respect to his demand for relief. (Doc. 5, at 7; Doc. 51, at 2). Correct Care Solutions additionally claims that the complaint does not allege it established a policy, custom or practice that caused Davis constitutional harm, as required for *Monell* liability under § 1983. (Doc. 51, at 5). Rather, Correct Care Solutions notes that the complaint simply focuses on the purported denial of Harvoni under the *DOC's* Hepatitis C treatment protocol, which Davis does not allege Correct Care Solutions had any responsibility in developing. (Doc. 53, at 1-2).

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a

---

[9] The Court notes that the brief in opposition also argues Defendant Ranker aided the Hepatitis C Committee by either suppressing, or declining to disclose, Davis's past medical records involving his former Hepatitis C treatment. (Doc. 58-1, at 4, 8-9). Davis thus supposes that his past qualification for treatment would necessarily make him eligible for DAA medication under the same DOC policy he seemingly argues is unconstitutional. Davis additionally references a skin condition he developed that allegedly went untreated by Defendants Ranker and Grego. (Doc. 60, at 2). However, even when taken as true, such sparse allegations fail to establish a claim for deliberate indifference to a serious medical need.

constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). In *Monell v. Dep't. of Soc. Serv's. of City of New York,* the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). A private corporation, though not a municipal body, is subject to the same considerations when contracted by a government to provide healthcare services to incarcerated individuals. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); *see also Chimenti v. Pennsylvania Dep't of Corr.*, No. CV 15-3333, 2017 WL 3394605, at *11 (E.D. Pa. Aug. 8, 2017) (noting that *Monell* liability may be extended to private corporations operating under a contract with the state, such as Correct Care Solutions). Accordingly, in order to state a viable § 1983 claim against Correct Care Solutions, the complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583); *Chimenti*, 2017 WL 3394605 at *11 (same); *see also Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010) ("To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute it to the [policymaker] itself, and show a causal link between the execution of the policy and the injury suffered.") (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).

Here, Davis's complaint fails to provide any factual allegations that set forth a plausible Eighth Amendment claim against Correct Care Solutions under § 1983. Indeed, the complaint's

only allegations against Correct Care Solutions appear to be set forth in the demand for relief, where Davis generally claims that, due to its refusal to provide treatment, Correct Care Solutions caused his liver damage. (Doc. 5, at 2, 7). Davis's brief in opposition also does little to support a claim for *Monell* liability, as it fails to demonstrate how Correct Care Solutions played a role in the creation or implementation of the challenged Hepatitis C policy, let alone any other corporate policy that caused him Eighth Amendment injury. (Doc. 52; Doc. 54). Accordingly, Davis does not sufficiently state a § 1983 claim against Correct Care Solutions, as he fails to attribute the DOC's challenged Hepatitis C policy to it, or otherwise identify one of its policies that would give rise to *Monell* liability. *See Tremper v. Correct Care Sols.*, No. CIV.A. 13-3626 FLW, 2014 WL 320338, at \*2 (D.N.J. Jan. 29, 2014) ("Because the Complaint fails to specify a custom or policy of Correct Care Solutions that caused the violation of Plaintiff's constitutional rights, it fails to state a claim under § 1983 against the entity.").

The Court also notes that Davis's brief in opposition attempts to clarify the allegations in the complaint by stating that Correct Care Solutions is a member of the Hepatitis C Committee.[10] (Doc. 52, at 2). Davis further avers that Correct Care Solutions employed certain

---

[10] Davis's brief in opposition also cites to various factual findings set forth in *Abu-Jamal*, seemingly for the proposition that they are necessarily true in the instant case. (Doc. 52). However, "[t]he Third Circuit has cautioned that [a court] may not take judicial notice of a prior court opinion in order to establish the truth of the adjudicative facts on which the opinion is based." *Montgomery v. Beneficial Consumer Disc. Co.,* No. Civ.A. 04–2114, 2005 WL 497776, at \*4 n. 5 (E.D.Pa. Mar. 2, 2005) (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.,* 181 F.3d 410, 426 (3d Cir.1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion-not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")). Accordingly, insofar as Davis attempts to rely on *Abu-Jamal* for the truth of its factual findings by the District Court, the undersigned declines to take judicial notice of such conclusions regarding Defendants' personal involvement under § 1983. Rather, at this early

unidentified consultants on the Hepatitis C Committee, that these consultants met with other members of the Hepatitis C Committee to review inmate medical charts, and that they ultimately determined whether or not inmates received treatment. (Doc. 52, at 4-5). In addition, Davis submits that Correct Care Solutions assessed his specific request for curative medication, and thus was personally involved in the Hepatitis C' Committee's decision to deny him Harvoni. (Doc. 52, at 5). Correct Core Solutions argues, however, that such allegations rely on the theory of *respondeat superior* to impose liability. (Doc. 53, at 2). As discussed *supra*, such claims are insufficient to state a claim under § 1983. *See Sims*, 635 F. App'x at 20 (affirming private entities that provide medical services to inmates "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability."). Accordingly, even when taken as true in the light most favorable to Davis, the new allegations in the brief in opposition still fail to articulate a viable claim against Correct Care Solutions that meet the pleading standard under *Monell*.

As the requirements for personal involvement under 42 U.S.C. § 1983 are not met, the Eighth Amendment claim against Correct Care Solutions predicated on vicarious liability shall be **DISMISSED** without prejudice.

IV. **LEAVE TO AMEND**

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*, 293 F.3d 103, 108 (3d Cir. 2002).

---

stage in the proceedings, the Court will liberally construe the references to *Abu-Jamal* as Davis's own individual allegations, and take them as true for the purposes of the pending motions to dismiss.

Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, it is not apparent that amendment would be futile with respect to Davis's Eighth Amendment deliberate indifference claims against Defendants Wetzel, Ranker, Grego and Correct Care Solutions. Accordingly, Davis will be given the opportunity to submit an amended complaint that is complete in all respects. The amended complaint must be a pleading that **stands by itself without reference to earlier pleadings**. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). The amended complaint must also specify, in a coherent fashion, how each individual Defendant contributed to the allegations giving rise to the complaint. Moreover, it must be "simple, concise, and direct" as required by Rule 8(d)(1) of the Federal Rules of Civil Procedure. Finally, the amended complaint may not go beyond the scope of the Eighth Amendment claim already raised in Davis's original complaint.

V.    Conclusion

Based on the foregoing, the DOC Defendants' Motion to Dismiss (Doc. 56) and Correct Care Solutions' Motion to Dismiss (Doc. 50) are both **GRANTED.**

An appropriate Order follows.

BY THE COURT:

Dated: October 22, 2018                 *s/ Karoline Mehalchick*
                                                                 **KAROLINE MEHALCHICK**
                                                                 **United States Magistrate Judge**