# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN DAVIS,

        Plaintiff,

        v.

JOHN WETZEL, et al.,

        Defendants.

CIVIL ACTION NO. 1:18-CV-00804

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This case involves a *pro se* prisoner-Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), who brought the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. In the amended complaint, Davis brings an Eighth Amendment deliberate indifference claim against the following Defendants: John E. Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"); Dr. Paul Noel, Chief of Clinical Services of the DOC's Bureau of Healthcare Services, along with three other members of the Hepatitis C Treatment Committee that are identified as "John Does"; Joseph Silver, Director of the DOC's Bureau of Health Care Services; Nedra Grego,[1] Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious care nurse at SCI-Fayette; John Doe, Chief Counsel for the Hepatitis C Treatment Committee; and Correct Care Solutions, LLC the company that contracts with the DOC to provide medical services ("Correct Care"). (Doc. 87, at 2-5).

---

[1] Although this Defendant is currently known as Nedra Rice (Doc. 89, at 1), for the purposes of this memorandum the Court will continue to refer to her by her former last name, Grego.

Now pending before the Court are two motions to dismiss—the first filed by Defendants Wetzel, Noel, Silva, Grego, and Ranker (collectively referred to as the "DOC Defendants") (Doc. 89), and the second filed by Correct Care (Doc. 91)—and a motion for a preliminary injunction, filed by Davis. (Doc. 48). For the reasons stated herein, the Court will **GRANT** the Defendants' respective motions to dismiss and **DENY** Davis's motion for a preliminary injunction.

## I.    BACKGROUND

Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), is a Hepatitis-C positive prisoner currently incarcerated at the State Correction Institution in Fayette, Pennsylvania ("SCI-Fayette").[2] (Doc. 87, at 1). On October 30, 2017, Davis, proceeding *pro se*, filed the original complaint in this matter in the United States District Court for the Western District of Pennsylvania. (Doc. 5, at 1-2). Davis also filed a motion to proceed *in forma pauperis* ("IFP") on October 27, 2017, which was granted by the Western District Court on October 30, 2017. (Doc. 2; Doc 4). After a lengthy procedural history, the Western District Court transferred Davis's cause of action to the Middle District of Pennsylvania on April 9, 2018. (Doc. 46; Doc. 47). The transferor court also deferred the following motions to the Middle District court for resolution: Davis's motion for preliminary injunction, filed on December 1, 2017 (Doc. 9; Doc. 48); a

---

[2] At the time Davis filed the original complaint, he was incarcerated at SCI-Fayette. (Doc. 5, at 1). On March 16, 2018, however, Davis informed the Court that he had been transferred to the State Correction Institution in Graterford, Pennsylvania ("SCI-Graterford") for a court appearance. (Doc. 40). Although Davis has not notified the Court of any change in his address since, Correct Care points out that the amended complaint suggests he has been transferred back to SCI-Fayette. (Doc. 91, at 1). Having conducted its own search of Davis using the inmate locator tool on the DOC's website, the Court notes that this publicly available database also reveals the same. *See* http://inmatelocator.cor.pa.gov.

partial motion to dismiss Defendants Wetzel, Grego, and Ranker from the action for lack of personal involvement, filed by the DOC Defendants on January 16, 2018[3] (Doc. 21; Doc. 56); and a motion to dismiss, filed by Correct Care on January 22, 2018 (Doc. 25; Doc. 50). (Doc. 46).

On October 22, 2018, the undersigned United States Magistrate Judge issued a Memorandum and Order that granted both motions to dismiss (Doc. 50; Doc. 56) and dismissed the original complaint without prejudice. (Doc. 85; Doc. 86). Specifically, this Court stated that Davis failed to adequately plead Defendants Wetzel, Ranker, and Grego were personally involved in the constitutional wrongdoings he alleged. (Doc. 85, at 5-10). The Court also found that Davis failed to demonstrate how Correct Care established a policy, custom, or practice that gave rise to the Eight Amendment violations he complained of, as required for *Monell* liability under § 1983. (Doc. 85, at 10-13). The Court granted Davis leave to amend, however, and emphasized that Davis's amended pleading must aver facts that specified "how each individual Defendant contributed to the allegations giving rise to the complaint." (Doc. 85, at 14). The Court additionally noted that the amended complaint could not go beyond the scope of his Eighth Amendment claim. (Doc. 85, at 14). Davis filed the amended complaint on November 13, 2018, which stands as the operative pleading in this matter. (Doc. 87).

On November 27, 2018, the DOC Defendants filed a partial motion to dismiss the amended complaint, along with a brief in support thereof. (Doc. 89; Doc. 90). The same day, Correct Care also filed a motion to dismiss as well as a supporting brief. (Doc. 91; Doc. 92).

---

[3] The DOC Defendants included this dismissal request in their motion to transfer from the Western District of Pennsylvania for improper venue. (Doc. 21).

Davis filed a brief in opposition to the DOC Defendants' motion on December 19, 2018 (Doc 94), and a brief in opposition to Correct Care's motion on December 20, 2018. (Doc. 96). To date, neither the DOC Defendants nor Correct Care has filed a reply brief.

The events giving rise to Davis's cause of action stem from the DOC's Hepatitis C protocol, and the decision to deny him certain treatment pursuant to this policy.[4] Davis was diagnosed with Hepatitis C while incarcerated within the DOC and, after being transferred to SCI-Smithfield, suffered from related liver deterioration. (Doc. 87, at 5). As such, on or about November of 1998, Davis alleges that DOC physicians determined he met the criteria for Hepatitis C treatment and prescribed him ribavirin and interferon. (Doc. 87, at 5, 14). Davis's condition did not respond to these antiviral medications, however, and the DOC eventually stopped treating him with them in 2003 and 2004. (Doc. 87, at 6, 14). Thereafter, on or around February 2007, Davis was transferred to SCI-Fayette, where he claims that his Hepatitis C worsened. (Doc. 87, at 6).

After curative direct-acting antiviral ("DAA") medications, including Harvoni, Sovaldi, and Veikira Pak, outmoded the antiviral drugs he previously received,[5] Davis submitted a request for DAA treatment on January 31, 2017. (Doc. 87, at 6). Defendant Ranker denied

---

[4] The Court notes that Davis has submitted copies of certain records in support of his amended complaint. (Doc. 87, at 13-24). These records document the disposition of Grievance No. 664288, as well as other informal requests related to Davis's Hepatitis C. As Davis has incorporated these documents into the amended complaint by reference, the Court considers them in the instant memorandum. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (Finding that under Rule 12(b)(6) the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[5] Indeed, Davis claims that, pursuant to a recommendation made by the American Association for the Study of Liver Diseases, the DOC eventually ceased prescribing ribavirin and interferon to its inmates. (Doc. 87, at 6).

Davis's request on February 6, 2017, however, and effectively informed him that he did not meet the criteria for the treatment he desired. (Doc. 87, at 7-9; Doc 87, at 16). In response, Davis filed a grievance, identified as No. 664288, wherein he complained that SCI-Fayette maintained a policy of non-treatment for its prisoners with Hepatitis C. (Doc. 87, at 7). Defendant Grego denied Davis's grievance on March 7, 2017 and stated that the DOC maintained a "clearly outlined policy" regarding the treatment of prisoners with Hepatitis C. (Doc. 87, at 7; Doc. 87, at 18). She further explained that the DOC's Hepatitis C treatment committee determined whether an inmate qualified for certain medical care and reiterated that Davis did "not meet criteria for treatment at th[at] time." (Doc. 87, at 7; Doc. 87, at 18). On final administrative review, and allegedly after the Hepatitis C Committee had provided its input, the DOC's Chief Grievance Officer upheld Defendant Grego's response on May 31, 2017. (Doc. 87, at 7-8; Doc. 87, at 20).

In the amended complaint, Davis appears to challenge the constitutionality of the DOC's interim Hepatitis C protocol. (Doc. 87). Although he sets forth somewhat different arguments than the ones in his original complaint, Davis claims that the Hepatitis C policy prevents inmates without "vast fibrosis or cirrhosis" from receiving DAA medications. (Doc. 87, at 5). Davis also argues that the interim protocol displays deliberate indifference to the known risk that he, and other prisoners with fibrosis of the liver, will continue to suffer from Hepatitis C related complications. (Doc. 87, at 3, 5, 9). Davis further challenges the application of the policy to him, and the decision to deny him DAA treatment despite his serious illness. Specifically, Davis asserts that the Defendants withdrew, countermanded, or ignored his prescribed Hepatitis C treatment. (Doc. 87, at 1, 9). Due to the Defendants' refusal to treat him with the DAA medications he requested, and their consequent acquiescence in the DOC's

Hepatitis C policy, Davis alleges that he developed abdominal pain, daily rectal bleeding, fainting spells, and a skin condition. (Doc. 87, at 9).

The amended complaint also alleges that Defendants Ranker and Grego, along with the members of the Hepatitis C Committee, were deliberately indifferent to his serious medical needs and effectively withdrew his prescribed treatment. (Doc. 87, at 8-10). Davis asserts that Defendants Ranker and Grego each knew he was not receiving medical treatment for his Hepatitis C, even though he was a previous candidate for antiviral medication. (Doc. 87, at 8-9). Davis also claims that both Defendants suppressed or withheld information regarding his prior treatment, despite an "obligation to advance the previous physician's determination." (Doc. 87, at 7, 9). Davis additionally contends that Defendant Ranker "refused to treat" a skin condition that was caused by his worsening Hepatitis C. (Doc. 87, at 6). With respect to Correct Care, Davis argues that they employed a policy that allowed its employees to "ignore/disregard prescribed medical treatment by physicians." (Doc. 87, at 9).

As for relief, Davis seeks declaratory judgment that the Defendants violated his "Eighth Amendment right to medical care for Hepatitis C." (Doc. 87, at 10). He also seemingly seeks to enjoin the use of the DOC's Hepatitis C Policy, receive the curative DAA medication he requested, and obtain immediate treatment for his Hepatitis-C related skin complications. (Doc. 87, at 10). Davis additionally seeks damages for the harm caused to his liver by effectively reversing a physician's prescribed Hepatitis C treatment and leaving his condition uncared for. (Doc. 87, at 11).

Davis seeks similar relief in his motion for a preliminary injunction, filed on December 1, 2017 while the action was still pending before the Western District of Pennsylvania. (Doc. 9; Doc. 48). In his supporting brief, Davis requests that the Defendants be enjoined from denying

his request for DAA treatment. (Doc. 49, at 2). Davis argues that he contracted Hepatitis C while in "the care, custody, and control" of the Defendants, and that they have refused to treat his condition since 2004. (Doc. 49, at 1, 17). Further, similar to the allegations in the original complaint, he alleges that the Defendants chose a course of monitoring his condition over treating it "for non-medical reasons." (Doc. 49, at 10). As a result, Davis alleges that he developed various medical complications related to his untreated chronic Hepatitis C, and that his liver function and health has deteriorated. (Doc. 49, at 3, 7-8, 10). Moreover, he asserts that he will continue to suffer from the adverse effects of Hepatitis C, and that the efficacy of his DAA treatment will be compromised if delayed any further. (Doc. 49, at 16). The DOC Defendants filed a brief in opposition to Davis's request for preliminary injunction on July 11, 2018 (Doc. 80), and Correct Care filed a brief in opposition the following day. (Doc. 81). Davis filed a reply brief on August 8, 2018. (Doc. 82).

As the Parties have filed all relevant briefs, these pending motions (Doc. 48; Doc. 89; Doc. 91) are now ripe for review. (Doc. 49; Doc. 80; Doc. 81; Doc. 82; Doc. 90; Doc. 92; Doc. 94; Doc. 96; Doc. 97).

## II.   STANDARD OF REVIEW

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a

plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, the Court is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In addition, "[u]nder Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the

plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Finally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).The Third Circuit has also instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

In their motion to dismiss, Correct Care argues that Davis has not stated a cognizable claim under 42 U.S.C. § 1983. (Doc. 92, at 5-11). Specifically, Correct Care contends that the amended complaint does not adequately plead the existence of a constitutionally injurious policy, practice, or custom that can be attributed to Correct Care. (Doc. 92, at 7). The DOC Defendants argue that Davis's claims against Defendant Ranker and Grego are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 89; Doc. 90). Indeed, the DOC Defendants claim that Davis has failed to allege Defendants Ranker and

Grego were personally involved in the alleged constitutional deprivations, as required for civil rights actions brought under 42 U.S.C. § 1983. (Doc. 90, at 6-8). The DOC Defendants further assert that Davis has failed to adequately state a claim for deliberate indifference in violation of the Eighth Amendment. (Doc. 90, at 8-12).

### A. CLAIMS ASSERTED AGAINST CORRECT CARE

In support of dismissal, Correct Care asserts that Davis failed to adequately plead it established a corporate policy, practice, or custom regarding the treatment Hepatitis C, as required for *Monell* liability. (Doc. 92, at 3). Rather, Correct Care points out that Davis alleges the DOC created and maintained the challenged Hepatitis C protocol. (Doc. 92, at 7). Further, Correct Care contends that Davis failed to demonstrate how any such policy they contributed to resulted in his alleged Eighth Amendment injury. (Doc. 92, at 3). As such, Correct Care claims that the amended complaint fails to cure the pleading deficiencies that existed in the original complaint. (Doc. 92, at 3).

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). In *Monell v. Dep't. of Soc. Serv's. of City of New York,* the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). A private corporation, though not a municipal body, is subject to the same considerations when

contracted by a government to provide healthcare services to incarcerated individuals. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); *see also Chimenti v. Pennsylvania Dep't of Corr.*, No. CV 15-3333, 2017 WL 3394605, at *11(E.D. Pa. Aug. 8, 2017) (noting that *Monell* liability may be extended to private corporations operating under a contract with the state, such as Correct Care Solutions). Accordingly, to state a viable § 1983 claim against Correct Care Solutions, the amended complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583); *Chimenti*, 2017 WL 3394605 at *11 (same); *see also Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010) ("To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute it to the [policymaker] itself, and show a causal link between the execution of the policy and the injury suffered.") (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).

Here, Davis alleges that Correct Care is a part of the Hepatitis C Committee that approves and denies treatment. (Doc. 87, at 3-4). Further, presumably with respect to the Hepatitis C protocol at issue, Davis asserts that his cause of action "concerns the implementation/use of a policy that constitutes deliberate indifference by barring sick, suffering patients who do not have vast fibrosis…from being treated with DAA medications." (Doc. 87, at 5). However, the amended complaint does not allege that Correct Care played any part in drafting or executing the challenged Hepatitis C policy. Indeed, Davis asserts that Defendant Noel, along with other DOC Defendants, developed and approved the protocol. (Doc. 87, at 3). "Given [Davis's] admission that it was the DOC which created, implemented, and maintained a Hepatitis C protocol there is no basis for a claim against Correct Care based upon a claim that

[Davis] did not qualify for certain treatment under the DOC Hepatitis C policy." *See Murray v. Wetzel*, No. 3:CV-17-491, 2018 WL 1334987, at *4 (M.D. Pa. Mar. 15, 2018); *see also Chimenti v. Pennsylvania Dep't of Corr.*, No. CV 15-3333, 2017 WL 3394605, at *11 (E.D. Pa. Aug. 8, 2017) (Dismissing Eighth Amendment claim for lack of *Monell* liability when plaintiff did not allege that Correct Care "established a corporate policy, or had a corporate practice or custom with respect to the use of DAADs to treat inmates with Chronic Hepatitis C."). Thus, as the amended complaint currently stands, Davis has failed to set forth a cognizable claim that Correct Care implemented or maintained the challenged Hepatitis C policy that allegedly led to his injury.

Davis additionally claims that Correct Care created "a policy and custom of [entering] contractual arrangements that require the company and its employees to ignore/disregard prescribed medical treatment by physicians." (Doc. 87, at 9; Doc. 96, at 1). However, even when taken as true, Davis fails to "nudge[] [his] claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specifically, Davis does not adequately plead that the Defendants interfered with his Hepatitis C treatment, let alone withheld any active treatment pursuant to this alleged custom. Indeed, even when read in the light most favorable to Davis, the amended complaint merely indicates that he was a previous candidate for antiviral medication that ultimately proved to be unsuccessful.

Davis further specifies that this past course of treatment, which consisted of methods that existed prior to the advent of DAA medications, was discontinued in 2004 when it failed to improve his condition. (Doc. 87, at 6). However, the amended complaint is devoid of any well-plead factual allegations that he has since been prescribed Hepatitis C medications, DAA or otherwise, that are currently being withheld. *See Henry v. Dreibelbis*, No. 3:CV-17-1391, 2018

WL 3818854, at *4 (M.D. Pa. Aug. 10, 2018) (dismissing Eighth Amendment claim when plaintiff did not allege that the Defendants failed to "implement [his Hepatitis C] treatment…which is required under the policy."). To the contrary, the gravamen of the amended complaint is that the Defendants have *not* prescribed Davis the curative DAA medications he desires. As such, to the extent that Davis relies on such an alleged custom to establish *Monell* liability, Davis has failed to plausibly allege that Correct Care maintained or applied a policy of countermanding prescribed Hepatitis C treatment.

As a final matter, the Court also notes that Davis's brief in opposition frequently cites to *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017), seemingly for the proposition that inmates with Hepatitis C "must be treated" with curative DAA medications under the Eighth Amendment. (Doc. 87, at 6, 10; Doc. 96, at 4-6). Notably, the court in *Abu-Jamal* considered a motion for preliminary injunctive relief and found that there was a reasonable likelihood of success on the merits of plaintiff's deliberate indifference claim. 2017 WL 34700, at *15, *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), and *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017). Unlike Davis, however, the plaintiff in *Abu-Jamal* had clearly alleged that the challenged Hepatitis C protocol ignored his serious medical need for DAA drugs because it imposed an unreasonable condition on treatment. *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *16. Specifically, the plaintiff claimed that the interim Hepatitis C policy declined to consider, without medical justification, the administration of curative DAA medications until his Hepatitis C reached a sufficiently advanced stage under the protocol. *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *15-17.

Here, apart from conclusory allegations that it demonstrates deliberate indifference, Davis does not specify why he believes the policy at issue is unconstitutional. Indeed, although the brief in opposition vaguely asserts that Correct Care practices a policy of denying Hepatitis C treatment for "non-medical reasons," (Doc. 96, at 7), Davis fails to articulate with particularity what these non-medical reasons are, or why they are constitutionally deficient. *Cf. Abu-Jamal v. Wetzel*, 2017 WL 34700, at *15-17; *see also Brown v. Wexford Health Sources, Inc.*, No. CV 16-1680, 2018 WL 3156856, at *10 (W.D. Pa. June 28, 2018) (denying motion to dismiss when plaintiff alleged that Defendants had "a policy of saving money by ignoring the serious medical needs of prisoners, and allege[d] that this policy ha[d] been applied to him through their failure to treat his Hepatitis C and related illnesses."); *Chimenti v. Pennsylvania Dep't of Corr.*, No. CV 15-3333, 2017 WL 3394605, at *9 (E.D. Pa. Aug. 8, 2017) (denying motion to dismiss when plaintiff alleged the Defendants "denied or delayed treatment [] with DAADs solely because of the cost of those drugs, and not for any medical reasons."). Simply stated, without more, Davis has not adequately pled that Correct Care, or the DOC Defendants for that matter, created an unconstitutional Hepatitis C policy that resulted in his purported harm.

As the requirements for *Monell* liability are not met, the Court shall **GRANT** Correct Care's motion to dismiss (Doc. 91) and **DISMISS** the Eighth Amendment claim asserted against it without prejudice.

B. Claims Asserted Against the DOC Defendants

In their motion to dismiss, the DOC Defendants argue that Davis fails to plausibly allege that Defendants Ranker and Grego were personally involved in the purported Eighth Amendment violations. (Doc. 90, at 6-8). According to the DOC Defendants, the records attached to the amended complaint demonstrate that neither Defendant Ranker nor Grego

played a role in Davis's "day to day medical care"—instead, they simply relayed the Hepatitis C committee's determination to Davis. (Doc. 90, at 7-8). Further, the DOC Defendants argue that Davis fails to allege how these Defendants had the authority to countermand any treatment decisions, let alone provide him with the DAA medications he requested. (Doc. 90, at 7). The DOC Defendants also assert that Davis fails to state a viable deliberate indifference claim under the Eighth Amendment, as his argument effectively amounts to a mere disagreement over the course of medical care he was provided. (Doc. 90, at 12).

In response, Davis alleges that both Defendants Ranker and Grego are members of the DOC's Hepatitis C committee. (Doc. 87; Doc. 94, at 6). Alternatively, Davis claims that they assist the committee in approving or denying Hepatitis C treatment for inmates at SCI-Fayette. (Doc. 87, at 4; Doc. 94 at 6). Davis further contends that Defendants Ranker and Grego both knew about his Hepatitis C diagnosis, understood that he was previously non-responsive to antiviral medication, and were aware that he was not being treated "after a physician prescribed him treatment." (Doc. 87, at 7; Doc. 94, at 7-9). Accordingly, Davis claims that these Defendants applied or upheld, and thereby acquiesced in, the Hepatitis C policy he challenges. (Doc. 87, at 7-9; Doc. 94, at 1). Davis also alleges that his Eighth Amendment claim amounts to more than a disagreement over his treatment, as Defendants Ranker and Grego monitored his Hepatitis C despite his deteriorating condition. (Doc. 94, at 13).

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious."). A serious medical need exists if the failure to treat a medical condition "may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle*, 429 U.S. at 103. To meet the deliberate indifference standard, it must also be shown that an official knowingly disregarded an excessive medical risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Deliberate indifference may be manifested by an "intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't. of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct.12, 2011). Nonetheless, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner ... do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.,* 499 F. App'x. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004)). Further, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236 (3d Cir. 2004).

Here, upon review of the amended complaint, Davis appears to advance two different theories in support of his deliberate indifference claim. First, Davis complains of the Defendants' decision to "withdraw[] [his] prescribed treatment for…Hepatitis C."[6] (Doc. 87, at 1). In his brief in opposition, Davis additionally claims that Defendants Ranker and Grego applied "a policy which countermanded a physician's prescribed treatment" for his condition. (Doc. 94, at 1). However, as discussed *supra*, Davis fails to plausibly allege that an active order for his DAA treatment exists but is being withheld. Accordingly, the Court is not persuaded that the Hepatitis C policy, let alone its alleged application to Davis by Defendants Ranker and Grego, amounts to a policy that countermands his prescribed treatment in violation of the Eighth Amendment.

Second, the amended complaint appears to challenge the Hepatitis C policy insofar as it purportedly bars prisoners without vast fibrosis or cirrhosis from obtaining DAA treatment. (Doc. 87, at 5). Nonetheless, as also discussed *supra*, Davis fails to set forth sufficiently detailed factual allegations regarding the constitutionality of the Hepatitis C protocol at issue. *Cf. Tillery v. Noel*, No. 3:18-CV-783, 2018 WL 3521212, at *9 (M.D. Pa. June 28, 2018), *report and recommendation adopted*, No. 3:18-CV-0783, 2018 WL 3518459 (M.D. Pa. July 20, 2018) (denying motion to dismiss when the plaintiff specifically "averred that the protocol allegedly relied upon by the defendants to make these medical judgments ha[d] itself been found to violate the Eighth Amendment, but that the defendant[s] continued to follow this constitutionally infirm protocol even after they had been enjoined to refrain from doing so.").

---

[6] The Court notes that this theory is different from the one advanced in the original complaint.

Indeed, the Court cannot discern why Davis believes the Hepatitis C policy violates the Eighth Amendment, let alone facilitates inadequate medical treatment for prisoners with Hepatitis C. Consequently, even assuming *arguendo* that Defendants Ranker and Grego had the authority to provide him with the DAA medication he seeks, the amended complaint does not establish how these Defendants knowingly acquiesced in an unconstitutional Hepatitis C policy by simply following or upholding it. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence *in the wrongful conduct*.") (emphasis added) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). As such, without more, the vague allegations in the amended complaint fail to set forth a claim that Defendants Ranker and Grego acted with deliberate indifference.[7]

For these reasons, the Court shall **GRANT** the DOC Defendants' motion to dismiss (Doc. 89) and **DISMISS** the Eighth Amendment claim asserted against it without prejudice.

C. PRELIMINARY INJUNCTIVE RELIEF

Finally, before the Court is Davis's motion for preliminary injunctive relief. (Doc. 48). Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). Moreover, issuance of such relief is at the discretion of the trial judge. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third

---

[7] As the Court finds this issue to be dispositive, it declines to consider the other arguments advanced by the DOC Defendants in their motion to dismiss.

Circuit consider the following four factors: "(1) likelihood of success on the merits; (2) irreparable harm resulting from denial of the relief; (3) the harm to the non-moving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003). It is the moving party who bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699. "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

"[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury *pendente lite* if the relief is not granted."[8] *United States v. Pennsylvania*, 533 F.2d 107, 110 (3d Cir. 1976). A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original).

---

[8] *Pendente lite* is a Latin term meaning "while the action is pending" or "[d]uring the proceeding or litigation." *Black's Law Dictionary* 1154 (7th ed.1999).

Here, as discussed *supra*, Davis has failed to demonstrate a likelihood of success on the merits of his Eighth Amendment claim. With respect to Correct Care, Davis failed to identity a specific policy, custom, or practice that is attributed to it and plausibly caused his alleged harm. Further, Davis has not alleged in a non-conclusory fashion why he believes the interim Hepatitis C protocol demonstrates deliberate indifference.[9] (Doc. 49). Insofar as Davis complains that the Defendants have been deliberately indifferent to his skin condition, which was allegedly caused by his chronic Hepatitis C (Doc. 49, at 3), the DOC Defendants provide medical records showing that he has been diagnosed with, and treated for, folliculitis. (Doc. 80, at 11; Doc. 80-1, at 19-51, Doc. 80-1, at 52-53). The records also demonstrate that DOC medical staff has prescribed him an oral antibiotic for this "common skin problem" as recently at June 6, 2018, thereby belying Davis's assertion that it has been left untreated. (Doc. 80, at 11; Doc. 80-1, at 51; Doc. 80-1, at 53). Accordingly, at this stage, Davis has failed to demonstrate a clear likelihood of success on the merits of his Eighth Amendment claims that warrant preliminary injunctive relief.

Further, upon review of the parties' respective submissions, it is evident that Davis is receiving medical treatment from DOC Medical providers. Davis is enrolled in the DOC's Chronic Care Clinic and was last assessed by the Hepatitis C Clinic on September 27, 2017. (Doc. 80-1, at 53). A Chronic Care Clinic Form from July 6, 2018 further reveals that Davis

---

[9] The Court notes that Davis's brief in support cites to allegations and findings from the *Abu-Jamal* decision, nearly word for word in some instances. (Doc. 49). However, for the same reasons discussed *supra*, the Court is not convinced that Davis has plausibly established the Defendants have interfered with any prescribed treatment. Further, to the extent Davis merely claims that he should qualify for treatment under the challenged protocol, regardless of its alleged unconstitutionality, the Court is not persuaded that his past course of treatment necessarily entitles him to DAA medication under the terms of the current Hepatitis C policy.

had an APRI score of .0525, that his liver disease control was "good," and that his liver disease status was "unchanged." (Doc. 80-1, at 29-34). Thus, Davis has failed to make a "clear showing of *immediate* irreparable injury." *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). As such, based on the evidence presented before the Court at this time, Davis fails to establish that he will suffer irreparable harm without the grant of a preliminary injunction.

For these reasons, Davis's motion fails to establish an entitlement to a preliminary injunction at this time. Accordingly, Davis's motion for a preliminary injunction (Doc. 48) shall be **DENIED**.

## IV. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*, 293 F.3d 103, 108 (3d Cir. 2002). However, the Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Here, the Court has already granted Davis leave to file an amended complaint. (Doc. 84; Doc. 85). Davis appears to have heeded the Court's suggestions and made some modifications to his amended complaint. Davis also appears to have raised different theories in support of his deliberate indifference claim, which were not included in his original complaint. As such, the Court cannot definitively discern whether amending the complaint once more would be futile in this instance.

Accordingly, the Court finds that permitting Davis leave to amend his complaint **a final time** would be an effective use of judicial resources, as it is consistent with Rule 15's core

principle that leave should be freely given when justice so requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (Leave should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. []."). Permitting Davis to file a final, all-inclusive second amended complaint would also grant Davis the opportunity to correct the pleading deficiencies with respect to his § 1983 claim, and clarify the basis of his Eighth Amendment arguments. *See Grayson*, 293 F.3d 103 at 108. Lastly, allowing Davis to amend his pleading is consistent with the Court's broad discretion in managing its docket "to make pleadings a means to achieve an orderly and fair administration of justice." *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.,* 377 U.S. 218, 227 (1964).

As such, Davis is directed to file a single, intelligible second amended complaint that is complete in all respects and sets forth factual allegations and legal claims in a manner that can be reviewed by the Court and answered by the Defendants. The second amended complaint must be a pleading that **stands by itself without reference to the original or amended complaint**. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). Consequently, any previously-asserted arguments, exhibits, or factual allegations that Davis omits from the forthcoming second amended complaint will be waived. Davis's second amended complaint must also recite factual allegations sufficient to raise his claimed right to relief beyond the level of mere speculation; contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); set forth averments that are "concise, and direct," Fed. R. Civ. P. 8(e)(1); and state such averments in separately-numbered paragraphs describing the date and time of the events alleged and identifying

wherever possible the specific participants in the acts about which he complains. *See Boyd v. New Jersey Dep't of Corr.*, 583 F. App'x 30, 32 (3d Cir. 2014) (not precedential), *cert. denied*, 135 S. Ct. 2374 (2015).

Further, in regard to his § 1983 claim, Davis must aver facts indicating the personal involvement of each state actor in the alleged wrongdoing. *See Rode,* 845 F.2d at 1207. With respect to his § 1983 claims against Correct Care, Davis must identify the specific policy, custom, or practice of either municipal entity that purportedly caused the constitutional deprivation(s). Moreover, Davis must set forth well plead factual allegations that clarify the basis of his Eighth Amendment challenge to the Hepatitis C protocol, and its alleged application to him. As a final matter, the second amended complaint may not go beyond the scope of Davis's Eighth Amendment claim.

## V.   CONCLUSION

Based on the foregoing, the DOC Defendants' Motion to Dismiss (Doc. 89) and Correct Care's Motion to Dismiss (Doc. 91) are both **GRANTED**. Plaintiff will be granted thirty days to file a final, curative second amended complaint. In addition, Davis's Motion for a preliminary injunction (Doc. 48) is **DENIED.**

An appropriate Order follows.

BY THE COURT:

Dated: February 15, 2019                    *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States Magistrate Judge**