# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN DAVIS,

              Plaintiff,

              v.

JOHN WETZEL, et al.,

              Defendants.

CIVIL ACTION NO. 1:18-CV-00804

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This case involves a *pro se* prisoner-Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), who brings the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. In his second amended complaint, Davis brings an Eighth Amendment deliberate indifference claim against the following Defendants: John E. Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"); Dr. Paul Noel, Chief of Clinical Services of the DOC's Bureau of Healthcare Services; John Steinhart, Assistant Medical Director of the Bureau of Health Care Services; Rich Wenhold, Coordinator of Infection Control for the Bureau of Healthcare Services; Correct Care Solutions, LLC, the contracted healthcare provider for the Department of Corrections; Dr. Jay Cowan, a Correct Care Solutions representative; Joseph Silver, Director of the DOC's Bureau of Health Care Services; Nedra Grego,[1] Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious care nurse at SCI-Fayette; and John Doe, Chief Counsel for the Hepatitis C Treatment Committee. (Doc. 112, at 2-4). Davis alleges that all Defendants are members of the Hepatitis C Treatment Committee ("the

---

[1] Although this Defendant is currently known as Nedra Rice (Doc. 89, at 1), for the purposes of this memorandum the Court will continue to refer to her by her former last name, Grego.

Committee"), which has adopted a policy in violation of the Eighth Amendment and rejected his request for treatment for nonmonetary reasons in deliberate indifference to his serious medical need to be treated for Hepatitis C. (Doc. 112).

Pending before the Court is a motion to dismiss filed by Defendants Correct Care Solutions and Jay Cowan (collectively, the "Correct Care Defendants").[2] (Doc. 116). The Correct Care Defendants submit that Davis has failed to correct the shortcomings of his last complaint, as identified in the Court's last decision on the motion to dismiss. (Doc. 104; Doc. 105). Specifically, Defendants aver that the claims against Defendant Cowan should be dismissed for failure to articulate any personal involvement by Defendant Cowan in Davis's medical care, and further, that Davis has failed to state a cognizable Eighth Amendment claim against Correct Care Solutions, as he has failed to adequately identify any policy, custom or practice of Correct Care Solutions which resulted in deliberate indifference to Davis's medical needs. (Doc. 117).

For the reasons stated herein, the Court will **DENY** the motion to dismiss.

## I.  BACKGROUND

Davis is a Hepatitis-C positive prisoner currently incarcerated at the State Correction Institution in Fayette, Pennsylvania ("SCI-Fayette"). (Doc. 130, at 3). On October 30, 2017, Davis, proceeding *pro se*, filed the original complaint in this matter in the United States District Court for the Western District of Pennsylvania. (Doc. 5, at 1-2). Davis also filed a motion to proceed *in forma pauperis* ("IFP") on October 27, 2017, which was granted by the Western District Court on October 30, 2017. (Doc. 2; Doc. 4). After a lengthy procedural history, the

---

[2] The DOC Defendants filed an Answer to the Second Amended Complaint on March 25, 2019 (Doc. 113).

Western District Court transferred Davis's cause of action to the Middle District of Pennsylvania on April 9, 2018. (Doc. 46; Doc. 47). The transferor court also deferred the following motions to the Middle District court for resolution: Davis's motion for preliminary injunction, filed on December 1, 2017 (Doc. 9); a partial motion to dismiss Defendants Wetzel, Grego, and Ranker from the action for lack of personal involvement, filed by the DOC Defendants on January 16, 2018[3] (Doc. 21; Doc. 56); and a motion to dismiss, filed by Correct Care on January 22, 2018 (Doc. 25; Doc. 46).

On October 22, 2018, the undersigned United States Magistrate Judge issued a Memorandum and Order on multiple motions to dismiss that had been filed in the case (Doc. 25; Doc. 50) and dismissed the original complaint without prejudice. (Doc. 85; Doc. 86). Specifically, Davis failed to adequately plead that Defendants Wetzel, Ranker, and Grego were personally involved in the constitutional wrongdoings he alleged. (Doc. 85, at 5-10). Davis also failed to demonstrate how Correct Care established a policy, custom, or practice that gave rise to the Eighth Amendment violations he complained of, as required for *Monell* liability under § 1983. (Doc. 85, at 10-13). The Court granted Davis leave to amend, however, and emphasized that Davis's amended pleading must aver facts that specified "how each individual Defendant contributed to the allegations giving rise to the complaint." (Doc. 85, at 14). The Court additionally noted that the amended complaint could not go beyond the scope of his Eighth Amendment claim. (Doc. 85, at 14). Davis filed the amended complaint on November 13, 2018. (Doc. 87).

---

[3] The DOC Defendants included this dismissal request in their motion to transfer from the Western District of Pennsylvania for improper venue. (Doc. 21).

On November 27, 2018, Defendants Grego, Noel, Ranker, Wetzel, and Silver ("DOC Defendants") filed a partial motion to dismiss the amended complaint, along with a brief in support thereof. (Doc. 89; Doc. 90). The same day, Correct Care Solutions also filed a motion to dismiss as well as a supporting brief. (Doc. 91; Doc. 92). Davis filed a brief in opposition to DOC Defendants' motion on December 19, 2018 (Doc 94), and a brief in opposition to Correct Care Solution's motion on December 20, 2018. (Doc. 96). The undersigned United States Magistrate Judge issued a Memorandum and Order on February 15, 2019, granting the motions to dismiss. (Doc. 104; Doc. 105). This Court again found that Davis failed to demonstrate how Correct Care established a policy, custom, or practice giving rise to *Monell* liability under § 1983 and granted Correct Care's motion to dismiss. (Doc. 105). This Court also determined that Davis failed to allege that Defendants Ranker and Grego acted with deliberate indifference, so granted DOC Defendants' motion to dismiss. (Doc. 105). The Court again gave Davis leave to amend, and he filed the currently operative complaint on March 11, 2019. (Doc. 112). Correct Care Defendants filed the motion to dismiss which is now before the Court on March 25, 2019. (Doc. 116). Davis filed a response on April 18, 2019, (Doc. 120), and Correct Care Defendants filed a reply brief on May 2, 2019. (Doc. 123).

The events giving rise to Davis's cause of action stem from the DOC's Hepatitis C protocol, and the decision to deny him certain treatment pursuant to this policy.[4] Davis was

---

[4] The Court notes that Davis has submitted copies of certain records in support of his amended complaint. (Doc. 112, at 14-23). These records document the disposition of Grievance No. 664288, as well as other informal requests related to Davis's Hepatitis C. As Davis has incorporated these documents into the amended complaint by reference, the Court considers them in the instant memorandum. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (Finding that under Rule 12(b)(6) the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

diagnosed with Hepatitis C while incarcerated within the DOC, and after being transferred to SCI-Smithfield, suffered from related liver deterioration. (Doc. 112, at 5). As such, in November of 1998, Davis alleges that DOC physicians determined he met the criteria for Hepatitis C treatment and prescribed him Ribavirin and Interferon. (Doc. 112, at 5-6, 15). Davis's condition did not respond to these antiviral medications, however, and the DOC eventually stopped this treatment in 2004. (Doc. 112, at 6, 15). Thereafter, in February 2007, Davis was transferred to SCI-Fayette, where he claims his Hepatitis C worsened. (Doc. 112, at 6).

After curative direct-acting antiviral ("DAA") medications, including Harvoni, Sovaldi, and Veikira Pak, outmoded the antiviral drugs he previously received,[5] Davis submitted a request for DAA treatment on January 31, 2017. (Doc. 112, at 6). Defendant Ranker denied Davis's request on February 6, 2017, and effectively informed him that he did not meet the criteria for the treatment he desired. (Doc. 112, at 7, 9-10, 17). In response, Davis filed a grievance, identified as No. 664288, wherein he complained that SCI-Fayette maintains a policy of inadequate medical care for its prisoners with Hepatitis C. (Doc. 112, at 7, 23). Defendant Grego denied Davis's grievance on March 7, 2017, and stated that the DOC maintains a "clearly outlined policy" regarding the treatment of prisoners with Hepatitis C. (Doc. 112, at 8, 19). She further explained that the DOC's Hepatitis C Treatment Committee determines whether an inmate qualifies for certain medical care and reiterated that Davis did "not meet criteria for treatment at th[at] time." (Doc. 112, at 8, 19). On final administrative review, and allegedly after the Committee had provided its input, the DOC's

---

[5] Indeed, Davis claims that, pursuant to a recommendation made by the American Association for the Study of Liver Diseases, the DOC eventually ceased prescribing ribavirin and interferon to its inmates. (Doc. 106, at 6).

Chief Grievance Officer upheld Defendant Grego's response on May 31, 2017. (Doc. 112, at 8-9, 23).

In the amended complaint, Davis challenges the constitutionality of the DOC's interim Hepatitis C protocol. (Doc. 112). Davis claims that the Hepatitis C policy prevents inmates without "vast fibrosis or cirrhosis or who do have fibrosis or cirrhosis" from receiving DAA medications. (Doc. 112, at 5). Davis also argues that the protocol displays deliberate indifference to the known risk that he, and other prisoners with Hepatitis C, will continue to suffer from complications including ascites, partol hypertension, hepatic encephalopathy, and esophageal varices. (Doc. 112, at 1, 5, 9). Davis further challenges the application of the policy to him, and the decision to deny him DAA treatment despite his serious illness. (Doc. 112, at 1, 9-12). Due to Defendants' refusal to treat him with the DAA medications he requested Davis alleges that he suffers from liver damage, abdominal pain, daily rectal bleeding, fainting spells, and a skin condition. (Doc. 112, at 10-11). Davis alleges that Correct Care Defendants are members of the Committee which is responsible for adopting the protocol. (Doc. 112, at 3-4, 11).

Davis also claims that Correct Care Defendants are responsible for "a policy, practice or custom of ignoring the serious medical needs of Pennsylvania prisoners to save funds." (Doc. 112, at 10-11). Davis claims that the consequence of their policies and customs is that patients, including himself, suffer declining health including liver damage, abdominal pain, rectal blood flow, passing out, and skin conditions. (Doc. 112, at 11). Further, Davis claims that Defendant Cowan, as the Correct Care Solutions representative, is personally liable for ensuring that the protocol is followed. (Doc. 112, at 3).

As for relief, Davis seeks declaratory judgment that the Defendants violated his "Eighth Amendment right to medical care for Hepatitis C." (Doc. 112, at 12). He also seeks to enjoin the use of the DOC's Hepatitis C Policy, receive the curative DAA medication he requested, and obtain immediate treatment for his Hepatitis-C related skin complications. (Doc. 112, at 12). Davis additionally seeks damages for the harm caused to his liver by effectively ignoring his request for Hepatitis C treatment and leaving his condition untreated. (Doc. 112, at 12).

## II.  STANDARD OF REVIEW

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips [v. Cnty of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]* and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In order to state a valid cause of action, a plaintiff must provide some factual ground for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007). A trial court must assess whether a complaint states facts upon which relief can be granted, and should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When it comes to the factual grounds, however, a court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

In their motion to dismiss, Correct Care Defendants argue that Davis has not stated a cognizable claim under 42 U.S.C. § 1983. (Doc. 117 at 4-5). Specifically, Correct Care Defendants contend that the amended complaint does not adequately plead the existence of a constitutionally injurious policy, practice, or custom that can be attributed to Correct Care. (Doc. 117, at 5). Correct Care Defendants further assert Davis alleges no personal involvement by Defendant Cowan and that the extent of his alleged involvement is limited to a supervisory role as liaison between the Committee and Correct Care Solutions. (Doc. 117, at 4-5).

### A.   CLAIM AGAINST DEFENDANT CORRECT CARE SOLUTIONS, LLC

In support of dismissal, Correct Care Solutions asserts that Davis failed to adequately plead it established a corporate policy, practice, or custom regarding the treatment for Hepatitis C, as required for *Monell* liability. (Doc. 117, at 11). Rather, it argues that Davis alleges the DOC created and maintained the challenged Hepatitis C protocol. (Doc. 117, at 11). Further, Correct Care Solutions contends that insofar as Davis is attempting to hold it liable for the actions of Defendant Cowan on the Committee, that argument should fail due to the inability of plaintiffs to hold private companies liable pursuant to *respondeat superior*. (Doc. 117, at 13). As such, Correct Care claims that the amended complaint fails to cure the pleading deficiencies that existed in the original complaint. (Doc. 117, at 13).

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). In *Monell v.*

*Dep't. of Soc. Serv's. of City of New York,* the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. 658, 694 (1978). A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *Moore v. Wetzel*, No. 1:18-CV-1523, 2019 WL 1397405, at *7 (M.D. Pa. Mar. 6, 2019), *report and recommendation adopted*, No. 1:18-CV-1523, 2019 WL 1383631 (M.D. Pa. Mar. 27, 2019); *citing Henry v. Buskirk*, 2011 U.S. Dist. LEXIS 18644 (E.D. Pa. 2011)(internal citations omitted).

Accordingly, to state a viable § 1983 claim against Correct Care Solutions, the amended complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003)); *Chimenti*, 2017 WL 3394605 at *11 (same); *see also Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010) ("To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute it to the [policymaker] itself, and show a causal link between the execution of the policy and the injury suffered.") (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).

To establish a 'policy,' a plaintiff must show that "a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation,

policy or edict." *Natale*, 318 F.3d at 584 (quotation omitted). To establish a 'custom,' a plaintiff must allege "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (quotation omitted). An entity acting under color of state law may be held liable when (1) a generally applicable policy is announced and the complained of act is an implementation of that policy, (2) no policy has been announced, but federal law has been violated by an act of the policymaker itself, or (3) when no affirmative act has occurred and the need to act "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584.

Here, Davis asserts that his cause of action "concerns the implementation/use of a policy that constitutes deliberate indifference by barring sick, suffering patients who do not have vast fibrosis…from being treated with DAA medications." (Doc. 112, at 5). Correct Care Solutions correctly states that Davis's amended complaint does not allege that it played any part in drafting the challenged Hepatitis C policy. (Doc. 117, at 11). Indeed, Davis asserts that Defendant Noel, along with other DOC Defendants, developed and approved the protocol and that Correct Care carried out the DOC's protocol. (Doc. 112, at 2-3). Liberally construing Davis's complaint, he alleges that the DOC created and developed an unconstitutional Hepatitis C policy which neglects to adequately treat inmates who need medical care, and that by adhering to the DOC's policy, Correct Care has adopted it and executed it as its own. (Doc. 112).

The Court finds that Davis has adequately alleged the existence of an unconstitutional policy, and also facts which indicate that Correct Care Solutions played an active role in the

implementation of the policy. According to his complaint, Correct Care Solutions implemented a policy that was dictated by the Committee. (Doc. 112, at 2-3, 7). Davis alleges that if the Committee were to direct that all inmates diagnosed with Hepatitis C be treated with the most recently developed medication, that Correct Care Solutions would do so. (Doc. 112, at ¶ 10) ("Correct Care Solutions deals directly with Defendant Dr. Noel, the same Defendant who is involved with the oversight of the medical contract to ensure that their contractor is in accord with their policies, procedures, and customs"). Davis alleges that Correct Care Solutions is a member of the Hepatitis C Treatment Committee, and approves and den[ie]s treatment. (Doc. 112, at ¶ 10 ). However, in this second amended complaint, Davis also alleges that Correct Care Solutions "adopted a policy, practice or custom of ignoring the serious medical needs of Pennsylvania prisoners to save funds." (Doc. 112, at ¶ 42).

Since liability can rest upon institutional acquiescence in an unlawful policy; institutional implementation of a facially unconstitutional policy promulgated by others, or an institutional failure to act affirmatively at all, when the need to take some action is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the institution can reasonably be said to have been deliberately indifferent to the need, the Court finds that these allegations are sufficient at the pleading stage of this litigation to state an institutional liability claim against Correct Care Solutions. See *Moore*, 2019 WL 1397405, at *8.[6]

_____

[6] Like the Court in *Moore*, the Court here underscores that the procedural posture of this case – that this matter is before the Court on a motion to dismiss – defines the scope of this review. Where unresolved factual issues remain regarding the respective roles of the DOC Defendants and the Correct Care Defendants in the development and implementation of the

B. Claim Against Jay Cowan

Defendant Cowan submits that Davis's Complaint fails to assert personal involvement so as to render him liable under § 1983. (Doc. 117, at 7).

It is well-settled that "a defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981) ). Blanket assertions of *respondeat superior* liability will not establish personal involvement. *Nealman v. Laughlin*, No. 1:15-CV-1579, 2016 WL 4539203, at *10 (M.D. Pa. Aug. 31, 2016). A plaintiff must allege that the defendant either directed or had actual knowledge of and acquiesced in the alleged conduct. *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207). Such knowledge may be inferred from the surrounding circumstances; however, "the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (*citing Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995).

In this case, Davis has alleged that Cowan is personally involved with his treatment, or the rejection of any request for treatment in his assertions that Cowan is a representative of Correct Care Solutions, and moreover, that Cowan is a member of the Hepatitis C Treatment Committee that approves and denies treatment. As such, the finds that these allegations are sufficient at the pleading stage of this litigation to state a claim against Jay Cowan.

---

policy, those issues cannot be addressed through a motion to dismiss. *Moore*, 2019 WL 1397405, at *8.

## IV. CONCLUSION

Based on the foregoing, the Correct Care Defendants' Motion to Dismiss (Doc. 116) is **DENIED**. The Correct Care Defendants shall file an answer to Davis's second amended complaint within 21 days of the Order accompanying this memorandum. Further, the pending stay on discovery in this matter (Doc. 133) is lifted.

An appropriate Order follows.

BY THE COURT:

Dated: February 25, 2020

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**