# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN DAVIS,

        Plaintiff,

        v.

JOHN WETZEL, et al.,

        Defendants.

CIVIL ACTION NO. 1:18-CV-00804

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This case involves a *pro se* prisoner-Plaintiff, Kevin Davis (hereinafter referred to as "Davis"), who brings the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. In his second amended complaint (the "Complaint"), Davis brings an Eighth Amendment deliberate indifference claim against the following Defendants: John E. Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"); Dr. Paul Noel, Chief of Clinical Services of the DOC's Bureau of Healthcare Services; John Steinhart, Assistant Medical Director of the Bureau of Health Care Services; Rich Wenhold, Coordinator of Infection Control for the Bureau of Healthcare Services; Correct Care Solutions, LLC, the contracted healthcare provider for the Department of Corrections; Dr. Jay Cowan, a Correct Care Solutions representative; Joseph Silva, Director of the DOC's Bureau of Health Care Services; Nedra Grego,[1] Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious care nurse at SCI-Fayette; and John Doe, Chief Counsel for the Hepatitis C Treatment Committee. (Doc. 112, at 2-4). Davis alleges that all Defendants are members of

---

[1] Although this Defendant is currently known as Nedra Rice (Doc. 89, at 1), for the purposes of this memorandum the Court will continue to refer to her by her former last name: Grego.

the Hepatitis C Treatment Committee ("the Committee"), which has adopted a policy in violation of the Eighth Amendment and rejected his request for treatment for nonmonetary reasons in deliberate indifference to his serious medical need to be treated for Hepatitis C. (Doc. 112).

Pending before the Court is a Motion for Summary Judgment filed by Defendants Grego, Noel, Ranker, Steinhart, Wenhold, Wetzel, and Silva (collectively, the "DOC Defendants"). (Doc. 142). DOC Defendants aver that the record presents no evidence that they were involved in a violation of Davis's Eighth Amendment rights and that, if they were, they are entitled to qualified immunity. (Doc. 143, at 9). DOC Defendants specifically assert that Defendant Wetzel had no active role in establishing and maintaining the Hepatitis C policy. (Doc. 143, at 22). They also assert that Davis lacks evidence showing his injuries were a result of DOC Defendants' application of the policy. (Doc. 143, at 22). DOC Defendants further submit that Dr. Noel used his reasoned medical judgment to provide reasonable care. (Doc. 143, at 22). Finally, DOC Defendants assert they are protected by qualified immunity because there is no controlling case law establishing that their conduct clearly violated statutory or constitutional rights. (Doc. 143, at 25, 32).

For the reasons stated herein, the Court will deny in part and grant in part the Motion for Summary Judgment.

## I.   SUMMARY OF MATERIAL FACTS

This factual background is taken from DOC Defendants' statement of material facts and accompanying exhibits. (Doc. 143-1; Doc. 154). Pursuant to Local Rule 56.1, Davis has provided his response to DOC Defendants' statement of facts and has provided accompanying exhibits. (Doc. 146; Doc. 147-1). Where Davis disputes facts and supports

those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Davis as the non-moving party, with all reasonable inferences drawn in his favor.

A. Procedural History

Plaintiff is Kevin Davis, an inmate currently incarcerated within the Pennsylvania Department of Corrections at the State Correctional Institute at Fayette. (Doc. 154, ¶ 1; Doc. 146, ¶ 1). On October 30, 2017, Davis filed a complaint initiating a civil rights action pursuant to 42 U.S.C. § 1983, alleging claims under the Eighth Amendment for deliberate indifference regarding his treatment for Hepatitis C ("HCV"). (Doc. 154, ¶ 2; Doc. 146, ¶ 2). On December 1, 2017, Davis filed a motion for a preliminary injunction which was briefed by the DOC Defendants on July 11, 2018. (Doc. 154, ¶¶ 3, 4; Doc. 146, ¶¶ 3, 4). DOC Defendants filed a motion to dismiss the complaint on January 16, 2018. (Doc. 154, ¶ 5; Doc. 146, ¶ 5). On October 22, 2018, the Court granted the motion to dismiss without prejudice and Davis was granted leave to file an amended complaint. (Doc. 154, ¶ 6; Doc. 146, ¶ 6).

Davis filed an amended complaint on November 13, 2018. (Doc. 154, ¶ 7; Doc. 146, ¶ 7). DOC Defendants filed a motion to dismiss the amended complaint on November 27, 2018. (Doc. 154, ¶ 8; Doc. 146, ¶ 8). On February 15, 2019, the Court granted DOC Defendants' motion to dismiss and Davis was granted leave to file a final, second amended complaint. (Doc. 154, ¶ 9; Doc. 146, ¶ 9). Additionally, Davis's motion for a preliminary injunction was denied. (Doc. 154, ¶ 9; Doc. 146, ¶ 9).

On February 27, 2019, Davis filed a second amended complaint, alleging claims for

deliberate indifference regarding his treatment for HCV and a skin condition. (Doc. 154, ¶ 10; Doc. 146, ¶ 10). The named DOC Defendants are Secretary John Wetzel, Dr. Paul Noel, John Steinhart, Richard Wenhold, Joseph Silva, Nedra Grego, and Noel Ranker. (Doc. 154, ¶ 11; Doc. 146, ¶ 11).[2] As relief, Davis seeks a declaratory judgment that his Eighth Amendment rights have been violated, an order directing Defendants to treat his HCV and skin condition, as well as compensatory and punitive damages. (Doc. 154, ¶ 12; Doc. 146, ¶ 12). DOC Defendants filed an answer to the second amended complaint on March 25, 2019. (Doc. 154, ¶ 13; Doc. 146, ¶ 13).

B. Davis's Claims

While incarcerated at SCI-Pittsburgh in November of 1998, Davis was diagnosed with the HCV. (Doc. 154, ¶ 14; Doc. 146, ¶ 14). Davis alleges that the named DOC Defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. (Doc. 154, ¶ 15; Doc. 146, ¶ 15). Davis alleges Defendant Wetzel is liable because he is a member of the Hepatitis C Treatment Committee (the "Committee"). (Doc. 154, ¶ 16; Doc. 146, ¶ 16). Alternatively, Davis alleges Wetzel is liable because, as Secretary, he approves and signs policies that violate inmates' constitutional rights and consents to the manner in which his staff implements the policy against inmates such as Davis. (Doc. 154, ¶ 16; Doc. 146, ¶ 16). Davis alleges Defendant Noel is liable because he was involved with developing the Hepatitis C Interim Protocol and as a member of the Committee, he approves or denies treatment. (Doc. 154, ¶ 17; Doc. 146, ¶ 17). Davis alleges Defendant Steinhart is the Bureau of Health Care Services ("BHCS") Assistant Medical Director and as a member of the

---

[2] Davis additionally sues a Defendant John Doe, chief counsel for the Department of Corrections and the Hepatitis C Treatment Committee. (Doc. 112, at 4; Doc. 146, ¶ 11).

Committee that approves or denies treatment. (Doc. 154, ¶ 18; Doc. 146, ¶ 18). Davis alleges Defendant Wenhold is the BHCS Infection Control Coordinator ("ICC") and a member of the Committee that approves or denies treatment. (Doc. 154, ¶ 19; Doc. 146, ¶ 19). Davis alleges Defendant Silva is the Director of BHCS and a member of the Committee that approves or denies treatment. (Doc. 154, ¶ 20; Doc. 146, ¶ 20). Davis alleges Defendant Grego is the Corrections Health Care Administrator ("CHCA") at SCI-Fayette and a member of the Committee that approves or denies treatment. (Doc. 154, ¶ 21; Doc. 146, ¶ 21). Alternatively, Davis argues Defendant Grego is liable because she is one of the Committee's aids who approves or denies treatment for patients at the institution. (Doc. 154, ¶ 21; Doc. 146, ¶ 21). Davis alleges Defendant Ranker is the Infectious Care Nurse ("ICN") at SCI-Fayette and is a member of the Committee that approves or denies treatment, or alternatively, one of the Committee's aids who approves or denies treatment for patients at the institution. (Doc. 154, ¶ 22; Doc. 146, ¶ 22). Davis alleges that Defendants Ranker and Grego complied with the Hepatitis C policies, rather than providing him with the treatment he requested. (Doc. 154, ¶ 23; Doc. 146, ¶ 23). Concerning his skin condition, Davis alleges Defendant Ranker refused to treat him. (Doc. 154, ¶ 24; Doc. 146, ¶ 24).

On January 31, 2017, Davis submitted an inmate request form requesting either an explanation as to why he had not received HCV treatment with the new drugs on the market, or alternatively, the directive to the medical department to begin instituting such treatment. (Doc. 154, ¶ 25; Doc. 146, ¶ 25; Doc. 147-1, at 1). On February 6, 2017, Defendant Ranker responded that the Committee would determine his plan for treatment and that in the meantime he would continue to be monitored in chronic care clinic as determined by his treatment plan. (Doc. 154, ¶ 25; Doc. 146, ¶ 25; Doc. 147-1, at 1). On February 10, 2017,

Davis filed a grievance stating that SCI-Fayette has a policy of not treating inmates with HCV, which Defendant Grego denied. (Doc. 154, ¶ 26; Doc. 146, ¶ 26). The denial of the grievance was upheld on final review. (Doc. 154, ¶ 27; Doc. 146, ¶ 27; Doc. 147-1, at 10). The grievance response states that BHCS reviewed the grievance and Davis's medical records and determined that the medical care provided was reasonable and appropriate. (Doc. 154, ¶ 27; Doc. 146, ¶ 27; Doc. 147-1, at 9-10).

Davis claims Defendants Ranker and Grego were aware that a physician had prescribed treatment for him for HCV, but "suppressed/withheld the report." (Doc. 154, ¶ 28; Doc. 146, ¶ 28). Additionally, Davis claims DOC Defendants Noel, Steinhart, Wenhold and Silva, as members of the Committee, acted with deliberate indifference and did not follow a physician's prescribed treatment nor complied with Davis's request for treatment, or in the alternative, advocated for the denial of treatment when their input was sought. (Doc. 154, ¶ 29; Doc. 146, ¶ 29).

On October 19, 2017, Defendant Ranker responded to Davis's inmate request regarding the "previous physician's determination," when Davis was prescribed Ribavirin and interferon from February 10, 2003, through February 2, 2004. (Doc. 154, ¶ 30; Doc. 146, ¶ 30).[3] Davis alleges that the "implementation/use" of the Hepatitis C policy constitutes deliberate indifference. (Doc. 154, ¶ 31; Doc. 146, ¶ 31). He claims that only inmates with vast fibrosis or cirrhosis are eligible for treatment with direct acting antiviral drugs. (Doc. 154, ¶ 31; Doc. 146, ¶ 31). Davis avers that as a result of the delay in receiving the treatment he requested, his liver has scarred, blood has flowed from his rectum, he has constant pain in his

---

[3] The doctor discontinued this treatment in 2004 because Davis was a "non-responder." (Doc. 154, ¶ 30; Doc. 146, ¶ 30).

abdomen, he has repeatedly passed out and he suffers from a skin condition. (Doc. 154, ¶ 32; Doc. 146, ¶ 32).

### C. MATERIAL FACTS

The DOC's Interim Hepatitis-C Protocol became effective on November 20, 2015. (Doc. 154, ¶ 33; Doc. 146, ¶ 33). Pursuant to the interim protocol, a first level screening of patients with HCV was conducted by the CHCA and the Site Medical Director at the patient/inmate's home site (institution). (Doc. 154, ¶ 34; Doc. 146, ¶ 34). Candidates for treatment with DAAD's were referred to the Committee for review. (Doc. 154, ¶ 34; Doc. 146, ¶ 34). At that time the Committee consisted of the BHCS Chief of Clinical Services, BHCS Assistant Medical Director, the Statewide Medical Director for the medical vendor, and the BHCS ICC. (Doc. 154, ¶ 35; Doc. 146, ¶ 35). The Committee reviewed all referrals to determine whether further testing or information was required and rendered a decision regarding whether the patient was appropriate for expedited treatment with DAAD's. (Doc. 154, ¶ 35; Doc. 146, ¶ 35). The interim policy was in effect until November 7, 2016, when the DOC issued an updated Hepatitis-C Protocol. (Doc. 154, ¶ 36; Doc. 146, ¶ 36).

As with the interim policy, initial screenings for patients took place at their home institution. (Doc. 154, ¶ 37; Doc. 146, ¶ 37). These screenings were conducted by the CHCA, ICN, and Site Medical Director. (Doc. 154, ¶ 37; Doc. 146, ¶ 37; Doc. 143-1, at 13). Candidates for treatment with DAAD's were referred to the Committee. (Doc. 154, ¶ 37; Doc. 146, ¶ 37; Doc. 143-1, at 22). At that time the Committee consisted of the BHCS Chief of Clinical Services, the Statewide Medical Director for the medical vendor, and the BHCS ICC. (Doc. 154, ¶ 38; Doc. 146, ¶ 38). The 2016 Protocol was in effect until the next updated Protocol became effective on May 16, 2018. (Doc. 154, ¶ 39; Doc. 146, ¶ 39).

As with the prior policies, initial screenings for patients took place at their home institution. (Doc. 154, ¶ 40; Doc. 146, ¶ 40). These screenings were conducted by the CHCA, ICN, and Site Medical Director. (Doc. 154, ¶ 40; Doc. 146, ¶ 40). Candidates for treatment with DAAD's were referred to the BHCS for final review and approval by the Chief of Clinical Services, who consulted with an HCV specialist when necessary. (Doc. 154, ¶ 40; Doc. 146, ¶ 40).

On May 19, 2019, the current version of the Hepatitis-C Protocol went into effect. (Doc. 154, ¶ 41; Doc. 146, ¶ 41). A review of all referrals for treatment with DAAD's are conducted by the Chief of Clinical Services. (Doc. 154, ¶ 41; Doc. 146, ¶ 41). Under all of the versions of the Hepatitis C Protocol, the DOC utilizes a prioritization structure that mirrors that of the Federal Bureau of Prisons. (Doc. 154, ¶ 42; Doc. 146, ¶ 42). Inmates are assessed and prioritized based on need for treatment. (Doc. 154, ¶ 42; Doc. 146, ¶ 42). All patients with chronic HCV are seen and assessed in a chronic care clinic, at least every 6 months, to monitor their condition. (Doc. 154, ¶ 42; Doc. 146, ¶ 42).[4] Evidence before the Court, however, indicates Davis was seen yearly. (Doc. 147-1, at 1).

John Steinhart is the CHCA at SCI-Mahanoy. (Doc. 154, ¶ 43; Doc. 146, ¶ 43). Defendant Steinhart has been employed as the CHCA at SCI-Mahanoy for the past six years. (Doc. 154, ¶ 44; Doc. 146, ¶ 44). Prior to that, he was the nursing Supervisor at SCI-Mahanoy for six years. (Doc. 154, ¶ 44; Doc. 146, ¶ 44). Defendant Steinhart has never worked at the BHCS and is not a member of the Committee. (Doc. 154, ¶ 45; Doc. 146, ¶ 45). Davis was never housed at SCI-Mahanoy. (Doc. 154, ¶ 46; Doc. 146, ¶ 46). CHCA Steinhart has not

---

[4] The Court notes that the initial Interim Hepatitis-C Protocol called for yearly appointments for HCV patients with no cirrhosis. (Doc. 143-1, at 8).

had any contact with Davis and was never involved in any medical decisions regarding his care over the course of his incarceration within the DOC. (Doc. 154, ¶ 46; Doc. 146, ¶ 46).

While incarcerated, Davis has received medical care for HCV in the form of diagnosis, testing, monitoring, and treatment in line with DOC policy. (Doc. 154, ¶ 47; Doc. 146, ¶ 47; Doc. 143-1, at 50). Pursuant to policy, Davis has been seen regularly and assessed at chronic care clinic. (Doc. 154, ¶ 48; Doc. 146, ¶ 48). Davis provides evidence that through January 31, 2017, he was seen yearly. (Doc. 154, ¶ 48; Doc. 147-1, at 1). Some of Davis's alleged injuries arising from HPV listed in his Complaint (liver scarring, bleeding from rectum, abdominal pain) are not documented in his medical records. (Doc. 154, ¶ 49; Doc. 146, ¶ 49; Doc. 143-1, at 51).[5] However, Davis submits evidence via declaration under penalty of perjury that he was found passed out in his cell on November 20, 2019, and that he was diagnosed with diabetes as a result of delayed HPV treatment. (Doc. 146, ¶ 49; Doc. 148, at 3-4).

Prior to October 24, 2018, Davis was not considered an appropriate candidate for expedited treatment with DAAD's, so his file was not referred for review. (Doc. 154, ¶ 50; Doc. 146, ¶ 50). On October 24, 2018, Davis's file was referred to BHCS for review. (Doc. 154, ¶ 51; Doc. 146, ¶ 51). Defendants assert that, prior to receiving the referral, the Committee had not had the opportunity to review Davis's file and make a determination concerning whether he was a candidate for treatment. (Doc. 154, ¶ 51). However, Davis submits evidence that his file was reviewed by the Committee prior to October 24, 2018. (Doc. 146, ¶ 51; Doc. 147-1, at 4, 8).

---

[5] The Court notes that the record indicates Davis was diagnosed with a skin condition typically caused by a bacterial or fungal infection, for which he has received various forms of treatment. (Doc. 143-1, at 51).

After receiving the referral from the institution on November 13, 2018, Dr. Noel approved Davis for treatment with DAAD's. (Doc. 154, ¶ 52; Doc. 146, ¶ 52). Davis was treated for HCV with the direct acting viral drug Zepatier from December 18, 2018, through March 17, 2019. (Doc. 154, ¶ 53; Doc. 146, ¶ 53). Davis's test results dated June 18, 2019, indicated a sustained viral response, meaning he has been cured of HCV. (Doc. 154, ¶ 54; Doc. 146, ¶ 54). Davis will receive yearly viral load tests, as well as abdominal sonograms every 6 months to monitor his liver. (Doc. 154, ¶ 55; Doc. 146, ¶ 55).

According to Davis's medical records, he was diagnosed with folliculitis, a common skin problem typically caused by a bacterial or fungal infection. (Doc. 154, ¶ 56; Doc. 146, ¶ 56). His medical records reflect that he was seen on sick call and treated by the medical staff for this issue on numerous occasions. (Doc. 154, ¶ 56; Doc. 146, ¶ 56). On February 14, 2019, SCI-Fayette Medical Director Dr. Herbik and CHCA Stephanie Wood personally met with inmate Davis, examined him, and discussed his current treatment for folliculitis. (Doc. 154, ¶ 57; Doc. 146, ¶ 57). At that time, he did not voice any complaints regarding his treatment, rather he indicated the current treatment was working well and he was satisfied with the results. (Doc. 154, ¶ 57; Doc. 146, ¶ 57). Additionally, on July 23, 2019, Davis was seen by a dermatologist regarding his skin condition. (Doc. 154, ¶ 58; Doc. 146, ¶ 58).

Defendant Wenhold is the ICC with BHCS. (Doc. 154, ¶ 59; Doc. 146, ¶ 59). Under the 2015 and 2016 Hepatitis C policies, he was a member of the Committee. (Doc. 154, ¶ 59; Doc. 146, ¶ 59). Wenhold is a registered nurse. (Doc. 154, ¶ 60; Doc. 146, ¶ 60). As such, he does not have the ability to prescribe medication for inmates. (Doc. 154, ¶ 60; Doc. 146, ¶ 60). Wenhold's prior role on the Committee was purely administrative in nature. (Doc. 154, ¶ 61; Doc. 146, ¶ 61). When Davis's file was referred for review by the Committee on October

24, 2018, Wenhold was no longer a member of the Committee pursuant to policy. (Doc. 154, ¶ 62; Doc. 146, ¶ 62).

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." Id.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[6] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007) (citation omitted). The opposing party 'cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument.' *Id.* If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir.2007).

### III.   DISCUSSION

In their motion for summary judgment, DOC Defendants argue the record lacks evidence showing Defendants Silva, Wenhold, Ranker, Grego, and Steinhart were personally involved in the violations Davis alleges; that the record lacks evidence showing Defendants Wetzel and Noel's actions rose to the level of an Eighth Amendment violation; and that all DOC Defendants are entitled to qualified immunity from damages. (Doc. 143 at 9).

---

[6] *See also Beenick v. LeFebvre*, 684 Fed. Appx. 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

### A. INDIVIDUAL DEFENDANTS WHOSE INVOLVEMENT IS AT ISSUE

In support of their motion for summary judgment, DOC Defendants assert that the record contains no evidence that Silva, Wenhold, Ranker, Grego, and Steinhart were personally involved in wrongdoing, nor that they implemented policy influencing Davis's treatment. (Doc. 143, at 11). Specifically, they submit that Defendants Ranker and Grego were not members of the Committee so were not involved in policy-making, and that they cannot be held liable for complying with established Hepatitis C policy. (Doc. 143, at 12-13). DOC Defendants go on to state that Defendants Ranker and Grego, not being doctors, lacked authority to prescribe Davis's requested medication and were entitled to defer to the judgment of his doctors as well as the policy established by the Committee. (Doc. 143, at 13-15). Furthermore, DOC Defendants assert that Steinhart and Silva never served on the Committee and that Wenhold did not serve on the Committee when Davis's file was referred for review. (Doc. 143, at 16-18). Therefore, they submit that these individuals were never involved in the decision (nor were they personally involved with care) as to whether to approve Davis for direct-acting antiviral drug ("DAAD") treatment. (Doc. 143, at 16-18).

Davis responds that Defendants Ranker and Grego have not submitted evidence "that it was not their duty to determine which Hepatitis C patients at the SCI Fayette required treatment," and that such assertion would contradict the Hepatitis C policy. (Doc. 147, at 11-12). Davis further submits that Defendant Grego admitted to treating and caring for him. (Doc. 147, at 12). As to Defendant Steinhart, Davis submits that past case law establishes his role as a decision-maker liable for Hepatitis C policy. (Doc. 147, at 13-14). Defendant Silva, Davis states, should also be liable because the evidence shows he was involved with decision-making as Director of BHCS and that prior case law implicates him as a proper defendant.

(Doc. 147, at 14). Finally, Davis asserts that he has submitted evidence establishing that he was denied treatment on February 6, 2017, when Defendant Wenhold was admittedly a member of the Committee and that his reliance on a job description is insufficient to establish a lack of personal involvement. (Doc. 147, at 14-15).

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). To establish personal liability, a plaintiff must show that an official acting under color of state law caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation omitted). The official must have caused the deprivation either through personal direction or through actual knowledge and acquiescence, and both must be shown with "appropriate particularity. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In *Monell v. Dep't. of Soc. Serv's. of City of New York,* the Supreme Court determined that liability may also attach "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. 658, 694 (1978). Accordingly, to establish a viable § 1983 claim pursuant to *Monell*, the plaintiff must show "that [the defendant] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583); *Chimenti*, 2017 WL 3394605 at *11 (same); *see also Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010) ("To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute

it to the [policymaker] itself, and show a causal link between the execution of the policy and the injury suffered.") (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).

To establish a 'policy,' a plaintiff must show that "a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 584 (quotation omitted). An entity acting under color of state law may be held liable when (1) a generally applicable policy is announced and the complained of act is an implementation of that policy, (2) no policy has been announced, but federal law has been violated by an act of the policymaker itself, or (3) when no affirmative act has occurred and the need to act "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584.

The record lacks evidence that Defendants Ranker and Grego are subject to *Monell* liability for unconstitutional policy or custom. *See Monell*, 436 U.S. at 694. It is undisputed that Defendants Ranker and Grego, the Infectious Care Nurse at SCI-Fayette and the former Corrections Health Care Administrator at SCI-Fayette, were never members of the Committee. (Doc. 154, ¶¶ 35, 38, 40, 41; Doc. 146, ¶¶ 35, 38, 40, 41). There is also no dispute that the DOC was responsible for establishing Hepatitis C policy, and the Committee was responsible for making decisions with respect to whether Davis received DAAD's. (Doc. 154, ¶¶ 33, 35, 36, 40, 41; Doc. 146, ¶¶ 33, 35, 36, 40, 41). Davis does not dispute that "candidates for treatment with DAADs were referred to the Committee for review," and that "the Committee reviewed all referrals to determine whether further testing or information was required and rendered a decision regarding whether the patient was appropriate for expedited treatment with DAADs." (Doc. 154, ¶¶ 34, 35, 37; Doc. 146, ¶¶ 34, 35, 37). It is clear from

the record that an inmate's candidacy for DAAD treatment depended on objective criteria set by DOC policy. (Doc. 143-1, at 9, 18, 31, 41).

Davis argues that Defendants may not rely on their job description to establish their lack of personal involvement, but he fails to acknowledge that he bears the burden of establishing a genuine issue of material fact by identifying evidence in the record to support Defendants' involvement. (Doc. 147, at 11); *Velentzas*, 2010 WL 3896192, at *7. The only evidence Davis submits to establish Ranker and Grego were individuals responsible for determining who would be treated with DAADs is policy indicating they were to review inmates' antibody results and medical charts and apply established criteria to the screening results. (Doc. 147, at 11-12). This is insufficient to establish that they were at any point "decisionmaker[s] possess[ing] final authority to establish municipal policy" so as to create a genuine issue of material fact contrary to Defendants' evidence. *See Natale*, 318 F.3d at 584. The policy dictated they were to merely apply criteria established by other policymakers. Ranker and Grego may not be held liable pursuant to *Monell*.

Absent *Monell* liability, Davis submits that Ranker and Grego should be held liable for their actions while he was under their direct care. (Doc. 147, at 11-13). It is undisputed that Grego and Ranker are not doctors. (Doc. 154, ¶¶ 21, 22; Doc. 146, ¶¶ 21, 22) (Davis alleges that Grego is the Corrections Health Care Administrator and that Ranker is the Infectious Care Nurse at SCI-Fayette). Davis submits that he has established, through Grego's declaration, that she violated his rights by neglecting to forward his request for treatment to the Hepatitis C Treatment Committee. (Doc. 147, at 12). In her declaration, Grego states that on each of Davis's assessments he did not meet the criteria benchmark established for referral to the Committee. (Doc. 147-1, at 5-6). The Third Circuit has previously held that a non-

physician cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). This is because "if a prisoner is under the care of medical experts…, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). This reasoning applies with equal force to the positions of Grego and Ranker: the criteria for referral to the Committee was established by the DOC and Grego and Ranker were justified in believing that they were capably caring for Davis by acting in accordance with that policy. *See Spruill*, 372 F.3d at 236; *Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993) (rejecting deliberate indifference where officials followed standard operating procedures). Davis has failed to identify evidence that Grego and Ranker were either responsible for deciding whether he received anti-viral medication or that they could be held liable for the direct care they provided. Furthermore, DOC Defendants have identified evidence that the decision to deny Davis treatment was solely because he did not meet DOC protocol for Hepatitis C treatment. (Doc. 147-1, at 5-6). Accordingly, Davis's claims against Grego and Ranker fail and summary judgment will be granted as to the claims against them. *See Roberts v. Wilson*, 2017 WL 8727155, at *7 (M.D. Pa. 2017) (indicating that non-policymaker defendants would be entitled to summary judgment where the only evidence shows that they withheld treatment solely because plaintiff did not meet protocol for Hepatitis C treatment).

It is undisputed that Defendant Steinhart has never worked at the BHCS, is not a member of the Committee, and has not had contact with Davis or has been involved with decisions regarding his care. (Doc. 154, ¶¶ 45, 46; Doc. 146, ¶¶ 45, 46). Davis presents a prior case heard before this Court in which, he states, Steinhart was established to be the Chief

Health Care Administrator at the DOC and that he was potentially liable for implementing and enforcing the Hepatitis C treatment policy. (Doc. 147, at 13-14) (citing *Abu-Jamal v. Kerestes*, 2018 WL 2166052, at *6 (M.D. Pa. 2018)). However, in *Abu-Jamal*, the plaintiff sued Steinhart because of his role as the Chief Health Care Administrator at SCI-Mahanoy, the prison where the plaintiff was incarcerated. *Abu-Jamal v. Kerestes*, 2018 WL 2166052, at *6, 18 (M.D. Pa. 2018). Davis has never been housed at SCI-Mahanoy and so the record fails to establish a genuine issue of material fact as to Steinhart's role in his care: it shows that Steinhart is not implicated. (Doc. 154, ¶¶ 45, 46; Doc. 146, ¶¶ 45, 46). Therefore, summary judgment will be granted in Steinhart's favor.

It is undisputed that Defendant Silva's liability is predicated on his role as the Director of BHCS and member of the Committee which neglected to provide Davis with his requested treatment.[7] (Doc. 112, at 11; Doc. 154, ¶ 20; Doc. 146, ¶ 20). However, Davis does not dispute that the Director of BHCS has never been a member of the Committee. (Doc. 154, ¶¶ 35, 38, 40, 41; Doc. 146, ¶¶ 35, 38, 40, 41). The only evidence in the record implicating Silva in the denial of Davis's treatment is a grievance response stating, "The BHCS reviewed the medical record and determined the medical care provided was reasonable and appropriate." (Doc. 147-1, at 10). This evidence, by itself, would warrant denial of summary judgment, however the response further states that the DOC had updated its Hepatitis C protocol and Davis was not currently a candidate for treatment in accordance with that protocol. (Doc. 147-1, at 10). Thus, the record shows that the BHCS was acting in accordance with the DOC protocol. When a defendant presents evidence that their actions are in compliance with a prison's

---

[7] Davis does not allege that Silva was personally involved in his care. (Doc. 112).

medical protocol, deliberate indifference is precluded. *Roberts*, 2017 WL 8727155, at *7. Furthermore, Davis fails to submit evidence that Silva acted in establishing the DOC's Hepatitis C policy, nor that he had authority to change or control the enforcement of the policy. (Doc. 154, ¶¶ 35, 38, 40, 41; Doc. 146, ¶¶ 35, 38, 40, 41). Without such authority, Silva cannot be held liable. *See Parkell v. Danberg*, 833 F.3d 313, 331-32 (3d Cir. 2016) (explaining that a Warden would be liable for unconstitutional search practices only if he knew about the search practices <u>and</u> had authority to change them or not enforce them but chose not to). As such, Silva is entitled to summary judgment in his favor.[8]

It is undisputed that Defendant Wenhold was a member of the Committee while the 2015 interim and 2016 policies were in effect. (Doc. 154, ¶ 59; Doc. 146, ¶ 59). DOC Defendants submit that Davis's file was not referred to the Committee for review until October 2018, when Wenhold was no longer a member of the Committee. (Doc. 143, at 17). However, Davis has submitted evidence that his file was referred to the Committee in March 2017, when the 2016 policies were still in effect (therefore, when Wenhold was still a member of the Committee). (Doc. 147-1, at 8) (grievance response indicating Davis's lab work and testing was reviewed by the Committee and it was determined that he did not meet the criteria to receive treatment); *see* (Doc. 154, ¶ 39). Defendant Wenhold shall not be afforded summary judgment based on the fact that he was not on the Committee when Davis's file was referred.

---

[8] Defendants' liability in this case is not controlled by *Abu-Jamal* because this is a motion for summary judgment where record evidence of liability is required, whereas in *Abu-Jamal* the plaintiff was required only to *plead* that the defendants had authority to establish or enforce policy.

Furthermore, Wenhold's status in an administrative role on the Committee does not preclude liability. [9] The 2016 Hepatitis C policy, under which it was undisputed that Wenhold was a member of the Committee, states that "the patient's clinical status will be reviewed by a Hepatitis C Treatment Committee, consisting of the PA DOC BHCS Chief of Clinical Services, the Statewide Medical Director for the medical vendor, and the BHCS ICC." (Doc. 143-1, at 22). The policy does not indicate that the ICC (Wenhold) – even if "administrative" – was excused from taking part in the patient's clinical status review; the Committee is continuously referred to as one entity without indication that roles were unequal. (Doc. 143-1, at 22-23). Therefore, Wenhold is not entitled to summary judgment.

## B. Defendant Wetzel

DOC Defendants submit four reasons why Defendant Wetzel is deserving of summary judgment. [10] First, they assert that the Hepatitis C policy does not prevent anyone, including Davis, from receiving DAAD treatment. (Doc. 143, at 19-20). Rather, it only dictates priority so that the sickest inmates are treated first. (Doc. 143, at 20). Second, they submit that Davis cannot establish Wetzel's awareness of an unreasonable risk created by the policy because

---

[9] The 2016 Hepatitis C policy gave the Committee final authority to decide whether an inmate receives the antiviral treatment. (Doc. 143-1, at 22) ("The PA DOC has determined that there is no single method of prioritizing patients for treatment with anti-viral medications… The Committee will utilize the pertinent information available to determine if continued progression through the evaluation process is indicated. The review *may include, but will not be limited to*, laboratory test trending…") (emphasis added); *see Abu-Jamal v. Kerestes,* 779 F. App'x 893, 896 (3d Cir. 2019). Therefore, its members may be found liable under *Monell. See Parkell*, 833 F.3d at 331-32 (explaining that a Warden would be liable for unconstitutional search practices only if he knew about the search practices and had authority to change them or not enforce them but chose not to).

[10] As a preliminary matter, it is undisputed that Wetzel, as DOC Secretary, has never been a member of the Committee so cannot be held liable for such. (Doc. 154, ¶¶ 35, 38, 40, 41; Doc. 146, ¶¶ 35, 38, 40, 41).

Wetzel was entitled to defer to the judgment of the medical professional who developed the policy. (Doc. 143, at 20-21). Third, they submit that Davis has not presented evidence that Wetzel had an active role in establishing and maintaining the Hepatitis C policy or that he was aware of or indifferent to a risk posed by the policy's application. (Doc. 143, at 22). Lastly, they assert that Davis presents no evidence that he was injured as a result of the Hepatitis C policy. (Doc. 143, at 22). Davis responds by identifying prior case law holding that the protocol implemented by Wetzel was declared unconstitutional by this Court and asserting that Wetzel did not discontinue its use. (Doc. 147, at 17-18).

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious."). A serious medical need exists if the failure to treat a medical condition "may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle*, 429 U.S. at 103. To meet the deliberate indifference standard, it must also be shown that an official knowingly disregarded an excessive medical risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference may be manifested by an "intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't. of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct.12, 2011). It is clearly established that denial of "indisputably warranted" treatment for nonmedical reasons is a violation of the Eighth Amendment. *Abu-Jamal v. Kerestes*, 2019 WL 3246677, at *5 (3d Cir. 2019). When a defendant establishes evidence of a serious medical condition and is denied appropriate treatment for a nonmedical reason, then deliberate indifference is adequately supported. *Abu-Jamal*, 2019 WL 3246677, at *5. Hepatitis C qualifies as a serious medical condition. *Moore v. Luffey*, 767 F. App'x. 335, 340 (3d Cir. 2019); *Tillery v. Noel*, No. 3:18-CV-783, 2018 WL 3521212, at *7 (M.D. Pa. June 28, 2018), *report and recommendation adopted sub. nom. Tillery v. Noel*, No. 3:18-CV-783, 2018 WL 3518459 (M.D. Pa. July 20, 2018).

DOC Defendants' assertion that the Hepatitis C policy creates no risk of injury under the Eighth Amendment is meritless. Defendants presented this same argument to the Court in *Abu-Jamal*, asserting that the protocol did not absolutely deny treatment to any inmate who had Hepatitis C, but rather prioritized those who were in need. *Abu-Jamal*, 2016 WL 4574646, at *5. This Court rejected that argument, stating that the delay of treatment until an inmate's liver is "sufficiently cirrhotic" could "well constitute deliberate indifference." *Abu-Jamal*, 2016 WL 4574646, at *13. The protocol's effect of delaying DAA administration until advanced and irreparable damage occurred, despite knowing that the standard of care was to treat chronic Hepatitis C patients with DAA medications regardless of the stage of the disease, "chart[s] a course that denies treatment to inmates until they are on the verge of a

'catastrophic' health event, a decision that appears to contain a 'fiscal component,' and ignores the standard of care for the treatment of chronic Hepatitis C." *Abu-Jamal*, 2016 WL 4574646, at *13-14. Quoting the Court of Appeals for the Second Circuit, this Court adopted the premise that "[o]utright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials. *Abu-Jamal*, 2016 WL 4574646, at *14 (quoting *Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000). More recently, in a case in the Eastern District of Pennsylvania, the court held that the protocol issued in 2016, the one under which Davis was denied treatment in May 2017, was influenced by the cost of treatment rather than solely by the inmates' medical needs and so "the DOC has delayed necessary medical treatment for a non-medical reason." *Chimenti v. Wetzel*, 2018 WL 3388305, at *9 (E.D. Pa. 2018). As such, DOC Defendants' assertion that the policy does not implicate the Eighth Amendment is meritless.

DOC Defendants' argument that Defendant Wetzel should not be held liable because he was entitled to rely on the judgment of medical professionals is similarly unavailing. To support this argument, Defendants liken Wetzel's position to that of prison officials who are entitled to defer to the medical judgment of staff physicians. (Doc. 143, at 20) (citing *Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007); *Spruill*, 372 F.3d at 236; *Marshall v. Sobina*, 2011 WL 4729033 (W.D. Pa. 2011)). The officials sued in the cases Defendants cite are all lower level officials not responsible for approving medical policy. In *Spruill*, the court explains that the reason for its holding that a non-medical prison official may not be liable for a medical issue when the prisoner is under the care of a physician is because it would strain the prison's division of labor where responsibility for the "various aspects of inmate life [is divided] among

guards, administrators, physicians, and so on." *Spruill*, 372 F.3d at 236. Here, Wetzel has already strained this division of labor by approving the medical policy at issue. *See* Pennsylvania Department of Corrections, POLICY STATEMENT, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/01.01.01%20Policy %20Management%20System.pdf (establishing that the Secretary of Corrections bears authority to direct the operation of the DOC). Thus, the rationale articulated in these cases does not apply.

On the contrary, the record shows Wetzel may be responsible for establishing the policy at issue. Under § 1983, a supervisor-defendant may be held liable if they (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal quotations omitted); *rev'd on other grounds*, *Taylor v. Barkes*, 757 U.S. 822 (2015). A public official's liability arising from his policymaking position requires that (1) as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question; and (2) the official's authority to make policy in that area is final and unreviewable. *Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 540 (M.D. Pa. 2012). The policy governing Davis's treatment was issued by the Pennsylvania DOC, of which Davis alleges and DOC Defendants do not refute, Wetzel was the Secretary. (Doc. 143-1, at 13) ("This Hepatitis C Protocol for the Pennsylvania Department of Corrections (PA DOC) provides clinical guidelines…"); (Doc. 154, ¶ 16). The Secretary of Corrections is granted the authority to operate the DOC. Pennsylvania

Department of Corrections, POLICY STATEMENT, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/01.01.01%20Policy%20Management%20System.pdf. As such, evidence exists that Defendant Wetzel, as a matter of state law, was responsible for making policy in the area of business at issue and his authority to make the policy was final and unreviewable. *See Loscombe*, 902 F. Supp. 2d at 540. Furthermore, by signing the Hepatitis C protocol, as Defendants indicate Wetzel did, Wetzel "established and maintained" the policy which allegedly caused the constitutional harm. (Doc. 143, at 20); *see Barkes*, 766 F.3d at 316. As Secretary of the Department of Corrections responsible for establishing DOC policy, Wetzel is precluded from pleading deferment to medical professionals. The buck stops with the Secretary.

DOC Defendants next submit that the record lacks facts establishing Wetzel had an active role in establishing and maintaining the Hepatitis C policy. (Doc. 143, at 21-22). The Third Circuit has held that "to establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 223 (3d Cir. 2015). Summary judgment is inappropriate where evidence in the record shows that an official "had responsibility for developing policies and procedures." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). When a defendant has ultimate policymaking authority and, in fact, enacts the policy that is challenged, then the policymaker is charged with establishing or enforcing the policy. *Abdul-Aziz v. Lanigan*, 2018 WL 1069420, at *7 (D.N.J. 2018).

Here, there is evidence in the record that the policy at issue was promulgated by the Pennsylvania DOC. (Doc. 143-1, at 13). Defendant Wetzel, appointed Secretary of

Corrections in 2011, had ultimate policymaking authority at the time of the policy's promulgation.[11, 12] Therefore, a reasonable factfinder could infer that Defendant Wetzel established the Hepatitis C policy which Davis challenges. As such, the record contains sufficient evidence to raise a genuine dispute of material fact as to whether Wetzel "established or enforced policies and practices directly causing the constitutional violation" and summary judgment is not warranted on that issue. *See Chavarriaga*, 806 F.3d at 223.

DOC Defendants' final argument in support of Defendant Wetzel is that Davis fails to present evidence to establish he was injured from application of the policy. (Doc. 143, at 22). As long as a causal link between the policy at issue and the plaintiff's injury is "not too tenuous," the question of proximate cause should be left to the jury. *A.M. ex rel. J.M.K.*, 372 F.3d at 581 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). Here, Davis has submitted evidence through a sworn declaration that as a result of the delay in Hepatitis C treatment he passed out due to abnormally high blood glucose levels and was subsequently diagnosed with diabetes. (Doc. 148, at 3-4). His physician communicated to him that his pancreas stopped developing insulin due to his Hepatitis C illness. (Doc. 148, at 3).[13] This

---

[11]In disposing of a motion for summary judgment, a court may *sua sponte* take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

[12] Pennsylvania Department of Corrections, POLICY STATEMENT, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/01.01.01%20Policy%20Management%20System.pdf;

Pennsylvania Department of Corrections, SECRETARY OF CORRECTIONS, https://www.cor.pa.gov/Pages/Secretary%20of%20Corrections.aspx.

[13] For purposes of summary judgment, a declaration cannot create a genuine dispute of material fact when it is "blatantly contradicted" by objective evidence in the record, such as a videotape. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Here, Defendants have only

declaration constitutes evidence sufficient to raise a genuine dispute of material facts as to whether the policy at issue caused injury to Davis. *See A.M. ex rel. J.M.K.*, 372 F.3d at 581. For these reasons, Defendant Wetzel is not entitled to summary judgment.

C. DEFENDANT NOEL

Defendant Noel's defense is based on the constitutionality of the Hepatitis C policy. He does not dispute that he was a designated member of the Committee during all versions of the policy and does not argue he was not a policymaker for purposes of *Monell*. (Doc. 143, at 23-31). Rather, he asserts that the Hepatitis C policy did not violate the Eighth Amendment. (Doc. 143, at 23). Davis alleges liability based on Noel's establishment of the policy, not his direct care of Davis, thus that is the portion of Noel's argument that the Court will address. (Doc. 147, at 18-19).

DOC Defendants assert that Davis fails to prove that Noel was aware of a substantial risk of serious harm to Davis and disregarded that risk. (Doc. 143, at 23). They submit that Davis presents no evidence that Noel "failed to use his reasoned medical judgment to provide reasonable care for inmates" by the creation, administration and modification of the Hepatitis C policy. (Doc. 143, at 25). They state that the policy prioritizes inmates according to the seriousness of the disease. (Doc. 143, at 25-26). Accordingly, no inmate is absolutely precluded from receiving Hepatitis C treatment. (Doc. 143, at 26). This "prioritization" rational has not proved convincing for this Court.

The record before the Court evinces that on May 31, 2017, Davis was declared "not currently a candidate for treatment in accordance with the protocol" for treating Hepatitis C,

---

submitted the "relevant portions" of Davis's medical records, rather than *all* medical records, thus Davis's declaration is not contradicted. (Doc. 147-1, at 49).

and further that "there is an orderly progression that is required before treatment with certain tests." (Doc. 147-1, at 10). Also in the record is the protocol from that time period, which indicates that individuals with an Aspartate Aminotransferase to Platelet Ratio Index (APRI) score of less than 1.5 were not eligible for DAAD treatment. (Doc. 143-1, at 21) (discussing screening patients). As discussed *supra*, this Court had determined prior to 2017 that the Hepatitis C Treatment Review Committee (of which it is undisputed Noel was a member) put forth the Hepatitis C protocol while knowing "that the standard of care was to treat patients with chronic Hepatitis C with DAA medications such as Harvoni or Sovaldi, regardless of the stage of disease." *Abu-Jamal*, 2016 WL 4574646, at *14. The DOC's expert in that case, Dr. Jay Cowan, acknowledged that the standard of care was "to treat every patient for whom treatment with direct-acting antiviral medications is not medically contraindicated, regardless of disease progression," and that the rate of progression was very often unpredictable.[14] *Abu-Jamal*, 2016 WL 4574646, at *14. Defendants have submitted no medical reason for the denial of DAAD treatment to Davis and Davis swears that they never provided such reason. (Doc. 148, at 3). The Hepatitis C policy's prioritization system was known in 2017 to be inadequate yet the policy continued, and Noel was on the Committee which put forth the policy. (Doc. 143, at 23). Record evidence establishes a genuine issue of material fact as to the subjective component of a deliberative indifference claim.

Defendants further assert that adequate care was all that was owed, "not the 'best care possible' or the 'gold standard.'" (Doc. 143, at 26). They submit that monitoring and testing

---

[14] "This Circuit has taken the position that under Fed. R. Civ. P. 56 a court may take judicial notice of its own public records containing sworn testimony, affidavits and similar material described in Fed. R. Civ. P. 56(c)." *U.S. v. Webber*, 396 F.2d 381, 386 n. 10 (3d Cir. 1968).

were all that was required for an inmate with a low fibrosis score and so Defendant Noel cannot be held liable for deliberate indifference. (Doc. 143, at 26). This Court, however, has come to the decision that the 2016 protocol suffers from the "fatal flaw" that "it refuses, without medical justification, to provide treatment for certain inmates with [H]epatitis C and also imposes an unreasonable condition – having vast fibrosis or cirrhosis – on treatment." *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *9, 16 (M.D. Pa. 2017). The DOC's implementation of a policy that categorically denies treatment to certain inmates which is the established standard of care constitutes more than a "mere disagreement as to the proper course of treatment." *Abu-Jamal*, 2017 WL 34700, at *18. The plaintiff in *Abu-Jamal* established a reasonable likelihood of success of showing that the policy at issue in the case at bar could expose the defendants, including Noel who "had a role in crafting the DOC's hepatitis C policies," to liability for deliberate indifference to a serious medical need. All components of Davis's deliberate indifference claim are satisfied.[15] Davis's sworn declaration that he developed diabetes as a result of the treatment delay constitutes evidence of injury resulting from the policy. (Doc. 138, at 3-4). Defendant Noel's motion for summary judgment shall be denied.

### D.  Qualified Immunity is Not Warranted

Defendants last argument is that they are entitled to qualified immunity from this lawsuit. (Doc. 143, at 31-37). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116

---

[15] Expert testimony is not required to establish the existence of a serious medical need because Hepatitis C is a serious medical need as a matter of law. *Moore v. Luffey*, 767 F. App'x. 335, 340 (3d Cir. 2019).

L.Ed.2d 589 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010); *see also Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful" (internal quotation marks omitted)).

For a right to be clearly established for qualified immunity purposes, "its contours [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006) (internal quotations omitted). Though the law establishing the right should not be defined at a high level of generality, prior case law need not be directly on point. *Abu-Jamal*, 2018 WL 2166052, at *17. It must be obviously clear to a reasonable official that their conduct is unlawful. *Abu-Jamal*, 2018 WL 2166052, at *17.

This Court has held that "creating and/or enforcing a policy that denied necessary medical treatment to a suffering inmate for non-medical reasons" violates a clearly established right. *Abu-Jamal*, 2018 WL 2166052, at *19 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)). In *Abu-Jamal*, the inmate alleged that he suffered health problems from Hepatitis C and so requested anti-viral medication, that defendants including Wetzel and Noel formulated or

approved a medical protocol addressing who would be treated and not treated with anti-viral drugs, that the plaintiff had active chronic Hepatitis C, that Wetzel was aware of the health problems associated with delaying anti-viral drugs and that Noel – as a member of the Committee – determined that the plaintiff should not be treated with such drugs, that the only basis for refusing anti-viral drugs was monetary cost, and that there was no medical justification for not providing the anti-viral drugs. *Abu-Jamal*, 2018 WL 2166052, at \*18. This Court held that *Rouse* and *Monmouth Cty. Corr. Inst. Inmates* precluded qualified immunity for these alleged facts. *Abu-Jamal*, 2018 WL 2166052, at \*19-20. Here, the record contains evidence sufficient to establish a genuine issue of material fact as to the exact same allegations, only pertaining to Davis. Therefore, Defendants Wetzel, Wenhold, and Noel are not entitled to qualified immunity.

**IV.    CONCLUSION**

Based on the foregoing, DOC Defendants' Motion for Summary Judgment (Doc. 142) is **GRANTED** as it pertains to Defendants Grego, Ranker, Steinhart, and Silva. DOC Defendants' Motion for Summary Judgment is **DENIED** as it pertains to Defendants Wenhold, Wetzel, and Noel.

An appropriate Order follows.

**BY THE COURT:**

Dated: July 6, 2020                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**