## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN DAVIS,

                    Plaintiff,

          v.

JOHN WETZEL, et al.,

                    Defendants.

CIVIL ACTION NO. 1:18-CV-00804

(MEHALCHICK, M.J.)

### MEMORANDUM

*Pro se* prisoner-Plaintiff Kevin Davis ("Davis") initiated this civil rights action by filing a complaint on October 27, 2017, pursuant to 42 U.S.C. § 1983. (Doc. 5). In his second amended complaint, Davis brings an Eighth Amendment deliberate indifference claim against the following Defendants: John E. Wetzel ("Wetzel"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Paul A. Noel, M.D. ("Dr. Noel"), Chief of Clinical Services of the DOC's Bureau of Healthcare Services; John Steinhart, Assistant Medical Director of the Bureau of Health Care Services; Rich Wenhold, Coordinator of Infection Control for the Bureau of Healthcare Services; Correct Care Solutions, LLC ("CCS"), the contracted healthcare provider for the Department of Corrections; Dr. Jay Cowan ("Dr. Cowan"), a CCS representative; Joseph Silva, Director of the DOC's Bureau of Health Care Services; Nedra Grego ("Grego"),[1] Corrections Healthcare Administrator at SCI-Fayette; N. Ranker, an infectious care nurse at SCI-Fayette; and John Doe, Chief Counsel for the Hepatitis C Treatment Committee. (Doc. 112, at 2-4). Davis alleges that all Defendants are

---

[1] Although this Defendant is currently known as Nedra Rice (Doc. 89, at 1), for the purposes of this memorandum the Court will continue to refer to her by her former last name: Grego.

members of the Hepatitis C Treatment Committee ("the Committee"), which has adopted a policy in violation of the Eighth Amendment and rejected his request for treatment for nonmonetary reasons in deliberate indifference to his serious medical need to be treated for Hepatitis C. (Doc. 112, at 2-5). The parties have consented to proceed before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 20; Doc. 33; Doc. 44; Doc. 65).

A non-jury trial was conducted before Chief Magistrate Judge Karoline Mehalchick on May 23, 2022. (Doc. 218; Doc. 226). Defendants were represented by counsel and Davis represented himself *pro se*. (Doc. 226). Both parties presented testimony and evidence at trial, and both parties filed proposed finding of fact and conclusions of law following trial. [2] (Doc. 221; Doc. 225). Based on these submissions, the Court must determine whether the DOC Defendants provided misleading information to Davis that rendered the PLRA exhaustion of administrative remedies process "unavailable" to him.

The Court, having heard the testimony and reviewed all documentary evidence, now enters the following Findings of Fact, Conclusions of Law, and Decision pursuant to Rule 52 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 52.

## FINDINGS OF FACT

The following findings of fact are based upon the parties' filings, as well as the testimony and evidence that the Court found credible as presented at trial.

---

[2] At the non-jury trial, Davis sought to make an oral motion to prevent DOC Defendants from using and referring to Davis's medical records to rebut the injuries Davis allegedly sustained. (Doc. 226, at 53-54, Tr. of Trial, 53:20-54:2, May 23, 2022). The Court construes Davis's proposed motion as a motion *in limine* taking issue with potential evidence that may be used at a later trial. (Doc. 226, at 55, Tr. of Trial, 55:17-25, May 23, 2022). Such evidentiary issues may be raised in the future as the parties prepare for trial. (Doc. 226, at 55, Tr. of Trial, 55:17-25, May 23, 2022).

1. The Plaintiff is Kevin Davis, an inmate currently incarcerated within the Pennsylvania DOC at the State Correctional Institute at Fayette ("SCI-Fayette"). (Doc. 112, at 2).

2. The remaining Defendants are Paul A. Noel, M.D.; Rich Wenhold; and John E. Wetzel. (Doc. 112, at 2-3).

3. On January 31, 2017, Davis submitted a DC-135A informal inmate request to staff form addressed to Superintendent Lane. (Doc. 227-1, at 1). In the letter, Davis stated: "The federal court has ruled that we must be treated for [Heptaitis C]. Please explain why I have not been offered with this drug Harvoni or the drug that cures the same way I've been offered the programs. In the alternative, direct medical institute treatment for the juveniles."[3] (Doc. 227-1, at 1).

4. On February 6, 2017, Ranker issued a response on Superintendent Lane's behalf, stating that Davis's "labs and testing have been [forwarded] to the Hepatitis-C

---

[3] Davis is referring to United States District Judge Mariani's decision in *Abu-Jamal v. Kerestes*, No. 3:15-CV-00967, 2016 WL 4574646 (M.D. Pa. Aug. 31, 2016). (Doc. 227, at 1; Doc. 227-1, at 6). In *Abu-Jamal*, the Court found that the "DOC has an interim protocol to address patients with hepatitis C" and that, under that protocol, a "Hepatitis C Treatment Committee has the ultimate authority to decide whether" an inmate is treated with recently developed direct-acting antiviral ("DAA") medications. 2016 WL 4574646, at *5, 8. The Court concluded that "[t]he protocol as currently adopted and implemented presents deliberate indifference to the known risks which follow from untreated chronic hepatitis C." *Abu-Jamal*, 2016 WL 4574646, at *9. However, the Court did not issue a preliminary injunction because "[i]t was the Hepatitis C Treatment Committee who made the decision not to give Plaintiff DAA medications and that had, and continues to have, the ultimate authority to determine whether or not Plaintiff will receive the DAA medications," and "[t]he named Defendants [were] not members of the Hepatitis C Treatment Review Committee." *Abu-Jamal*, 2016 WL 4574646, at *9. Indeed, based upon these findings the Court subsequently entered a preliminary injunction, enjoining reliance upon the Committee's treatment protocol. *See Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *20 (M.D. Pa. Jan. 3, 2017), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept. of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), *and appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept. of Corr,* No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017).

Committee in Central Office." (Doc. 227-1, at 1). Ranker stated that "the Committee determines the plan of action as far as where you fall in the plan for treatment." (Doc. 227-1, at 1).

5.   On February 10, 2017, Davis filed Grievance 664288, which stated:

> The SCI Fayette has a policy not to treat prisoners in their care, custody and control who have the Hepatitis C virus, notwithstanding a court ruling for the DOC to provide the latest antiviral medication that cures the illness before advanced liver damage.
>
> On February 6, 2017, in response to the undersigne[d] inquiry for treatment with HARVONI/medication that has been found to cure Hepatitis C, the undersign[ed] was advised that a committee in on at the SCI Fayette has not decided on treatment for the undersign[ed], notwithstanding the federal courts have ruled that treatment must be provided before advanced liver damage and the DOC must provide the latest antiviral medication that cures the illness.
>
> (Doc. 227, at 2).

6.   Davis did not request monetary damages in the initial filing of Grievance 664288.

(Doc. 227, at 2).

7.   The initial grievance form of Grievance 664288 contains the following instruction:

> Refer to the DC-ADM 804 for procedures on the Inmate Grievance System. State your grievance in Block A in a brief and understandable manner. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted. [. . .] Provide a brief clear statement of your grievance. [. . .] *State all relief that you are seeking.*
>
> (Doc. 226, at 14-15, Tr. of Trial, 14:25-15:9 (emphasis added); Doc. 227, at 2).

8.   On March 7, 2017, an Initial Review Response to the grievance denied the grievance because "[t]here is a policy in place for the [DOC] regarding the treatment of inmates with Hepatitis C," and the Hepatitis C Treatment Committee found that Davis did not meet the required criteria to be approved for treatment

upon review of Davis's lab work and testing. ((Doc. 227, at 5).

9.  Appealing the initial denial, Davis argued that he be treated "with the new drug that cures [Hepatitis C] before liver damage occurs," in accordance with Judge Mariani's ruling. (Doc. 227, at 6).

10. Davis requested monetary damages in the initial appeal of Grievance 664288. (Doc. 227, at 6).

11. On March 24, 2017, Joseph Trempus, Major of Unit Management, upheld the initial denial of the grievance. (Doc. 227, at 7).

12. Davis filed a final appeal of the grievance to the Secretary's Office of Inmate Grievances & Appeals ("SOIGA") on March 28, 2017. (Doc. 227, at 8).

13. On April 13, 2017, SOIGA referred Grievance 664288 to the Bureau of Health Care Services. (Doc. 227, at 4).

14. On May 17, 2017, the Bureau of Health Care Services wrote to SOIGA regarding its review of the grievance, stating that the Bureau determined that the medical care provided to Davis was reasonable and appropriate, that Davis was not a candidate for treatment, and that there is no evidence of neglect or deliberate indifference. (Doc. 227, at 3).

15. The Final Appeal Decision was issued on May 31, 2017, upholding the lower denials of the grievance and finding as follows:

> Your issue with not being provided proper medical care for Hepatitis C was reviewed by the staff at the Bureau of Health Care Services. The BHCS reviewed the medical record and determined the medical care provided was reasonable and appropriate. The DOC has updated its protocol for treating Hepatitis C. You are not currently a candidate for treatment in accordance with the protocol and will continue to be monitored in chronic clinic as determined by your treatment plan. There is an orderly progression that is required before treatment with certain

tests, etc. so, as you move ahead, you will be included in these tests as part of your work up prior to treatment. You are encouraged to participate in your treatment plan and to discuss your concerns or changes with a practitioner. There is no evidence of neglect or deliberate indifference has been found. Therefore, your requested relief is denied.

(Doc. 112, at 23).

16. On October 30, 2017, Davis initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983, alleging claims under the Eighth Amendment for deliberate indifference regarding his treatment for Hepatitis C. (Doc. 5; Doc. 112).

17. On October 22, 2018, the Court granted two motions to dismiss that had been filed by CCS, dismissing the original complaint without prejudice. (Doc. 85; Doc. 86). The Court found that Davis failed to adequately plead how Defendants Wetzel, Ranker, and Grego were personally involved in the constitutional wrongdoings he alleged. (Doc. 85, at 5-10). The Court also found that Davis failed to demonstrate how CCS established a policy, custom, or practice that gave rise to the Eighth Amendment violations he complained of, as required for *Monell* liability under § 1983. (Doc. 85, at 10-13); *see Monell v. Dep't. of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978).

18. Davis filed the amended complaint on November 13, 2018. (Doc. 87).

19. On November 27, 2018, Defendants Grego, Noel, Ranker, Wetzel, and Silver ("DOC Defendants") filed a partial motion to dismiss the amended complaint. (Doc. 89). On February 15, 2019, the Court granted the motion to dismiss and granted Davis leave to file a second amended complaint. (Doc. 104; Doc. 105). This Court found that Davis failed to demonstrate how CCS established a policy, custom, or practice giving rise to *Monell* liability under § 1983 and that Davis failed

to allege that Defendants Ranker and Grego acted with deliberate indifference. (Doc. 105).

20. On February 27, 2019, Davis filed the second amended complaint, challenging the constitutionality of the DOC's interim Hepatitis C policy. (Doc. 112). Davis alleges that all Defendants are members of the Hepatitis C Treatment Committee that is responsible for adopting the Hepatitis C policy. (Doc. 112, at 2-5, 9-11). Davis claims that the Hepatitis C policy prevents inmates without "vast fibrosis or cirrhosis or who do have fibrosis or cirrhosis" from receiving direct-acting antiviral drug ("DAAD") medications. (Doc. 112, at 5). Davis also asserts that the Hepatitis C policy is deliberately indifferent to the known risk that he, and other prisoners with Hepatitis C, will continue to suffer from complications including ascites, portal hypertension, hepatic encephalopathy, and esophageal varices. (Doc. 112, at 1, 5, 9). Davis challenges the application of the policy and the decision to deny him DAAD treatment despite his serious illness. (Doc. 112, at 1, 9-12). Due to Defendants' refusal to treat Davis with the DAAD medications he requested, Davis alleges that he suffers from liver damage, abdominal pain, daily rectal bleeding, fainting spells, and a skin condition. (Doc. 112, at 10-11). Davis claims that the consequence of their policies and customs is that patients, including himself, suffer declining health including liver damage, abdominal pain, rectal blood flow, passing out, and skin conditions. (Doc. 112, at 11).

As for relief, Davis seeks declaratory judgment that Defendants violated his "Eighth Amendment right to medical care for Hepatitis C." (Doc. 112, at 12). He also seeks to enjoin the use of the DOC's Hepatitis C policy, receive the curative

DAAD medication he requested, and obtain immediate treatment for his Hepatitis C-related skin complications. (Doc. 112, at 12). Davis additionally seeks monetary damages for the harm caused to his liver by effectively ignoring his request for Hepatitis C treatment and leaving his condition untreated. (Doc. 112, at 12).

21. On March 25, 2019, DOC Defendant filed an answer to the second amended complaint and raised the affirmative defense of failure-to-exhaust. (Doc. 113). On November 20, 2019, DOC Defendants filed a motion for summary judgment. (Doc. 142). On July 6, 2020, the Court granted the motion in part and denied it in part. (Doc. 158; Doc. 159). Specifically, the Court granted the motion with respect to Defendants Grego, Ranker, Steinhart, and Silva, and denied the motion with respect to Defendants Wetzel, Dr. Noel, and Wenhold. (Doc. 158; Doc. 159). On March 12, 2021, Defendants CCS and Dr. Cowan filed a motion for summary judgment. (Doc. 184). On December 23, 2021, the Court granted the motion in favor of CCS and Dr. Cowan, dismissing them from this action. (Doc. 203; Doc. 204). On February 2, 2022, the Court issued an order scheduling a trial by jury to commence on August 29, 2022. (Doc. 206).

22. On February 7, 2022, the remaining DOC Defendants, Dr. Noel, Wenhold, and Wetzel, filed the motion to bifurcate these proceedings and conduct an initial non-jury trial on the issue of Davis's failure to properly exhaust administrative remedies, in advance of the jury trial scheduled on the remaining claims. (Doc. 207).

23. The non-jury trial was held on May 23, 2022, at which both parties presented witness testimony. (Doc. 218).

24. At the non-jury trial, DOC Defendants offered the testimony of Rhonda House, the DOC Superintendent's Assistant and Facility Grievance Coordinator at SCI-Fayette, and Davis offered his own testimony. (Doc. 226, at 4, 22, Tr. of Trial, 4:11, 22:9, May 23, 2022).

25. As the Grievance Coordinator, House has access to inmates' grievances and their grievance histories. (Doc. 226, at 11, Tr. of Trial, 11:3-5, May 23, 2022). House's responsibilities include reading the grievances, making sure it is written in compliance with DOC policies, assigning the grievance to a Lieutenant or other appropriate staff member, and either approving the responses or suggesting changes before entering all the information into the Grievance Tracking System. (Doc. 226, at 10, Tr. of Trial, 10:16-24, May 23, 2022).

26. House testified that the current version of the Pennsylvania DOC Inmate Handbook is the 2017 edition, which in effect at all times relevant to this action. (Doc. 226, at 5, Tr. of Trial, 5:25-6:7, May 23, 2022). All inmates are provided with a copy of the inmate handbook when they first come into the DOC. (Doc. 226, at 6, Tr. of Trial, 6:8-13, May 23, 2022).

27. House testified that the inmate Handbook does not contain the full versions of DOC policies, but inmates are able to obtain the full version of the policies by making a request with the library or housing units. (Doc. 226, at 7, Tr. of Trial, 7:11-17, May 23, 2022).

28. House testified that inmates are advised that they are responsible for following the full versions of all DOC policies and procedures that apply to them. (Doc. 226, at 7, Tr. of Trial, 7:20-25, May 23, 2022).

29. Reading from the Inmate Handbook, House offered testimony that the handbook directs inmates that: "This handbook provides general information regarding [DOC] policies and procedures. When DOC policies are changes, you will be given notice of the changes of the most current policy will become effective, regardless of what information is in this handbook. You are to keep this handbook until you are released. If it is lost or destroyed, you may purchase a new one." (Doc. 226, at 7, Tr. of Trial, 7:4-10, May 23, 2022).

30. House testified that Page 9 of the Inmate Handbook cites to DOC policy DC-ADM 804 (effective May 1, 2015), captioned Inmate Grievance System ("IGS"), which sets forth the relevant procedures for inmates to file a grievance. (Doc. 226, at 8-9, Tr. of Trial, 8:23-9:10).

31. Courts may take judicial notice of the Pennsylvania DOC's 2017 Inmate Handbook (effective May 1, 2015) and policy statement, DC-ADM 804. *See Ali v. Superintendent SCI Camp Hill*, No. 1:14-CV-1851, 2015 WL 5913197, at *3 (M.D. Pa. Oct. 7, 2015) (internal citations omitted).

32. The IGS requires a concern about prison life to be filed initially with the Facility Grievance Coordinator. DC-ADM 804 § 1(A)(5). Specific requirements of what the inmate must state in a grievance are identified in DC-ADM 804 § 1(A)(11), including a requirement that "if the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." DC-ADM 804 § 1(A)(11)(d). If the inmate receives an unfavorable response to his initial filing, he must appeal within fifteen working days to the Facility Manager. DC-ADM 804, § 2(A)(1)(a-b). If the inmate

receives an unfavorable response from the Facility Manager's review, he must appeal within fifteen working days to the Final Review. DC-ADM 804, § 2(B)(1)(b). A proper appeal to Final Review must include a written appeal to the SOIGA. DC-ADM 804 § 2(B)(1)(j)(5).

33. House testified that Davis previously filed the following grievances in which he requested monetary relief: (1) Grievance 501173, which was filed on March 13, 2014; (2) Grievance 516412, which was filed on June 28, 2014; (3) Grievance 531519, which was filed on October 11, 2014; and (4) Grievance 621833, which was filed on April 14, 2015. (Doc. 226, at 11-13, Tr. of Trial, 11:18-13:21, May 23, 2022).

34. Referring to Davis's grievance history, House testified that Davis has only filed one grievance regarding Hepatitis C treatment – Grievance 664288. (Doc. 226, at 13-14, Tr. of Trial, 13:22-14:2, May 23, 2022).

35. House testified that the DC-804, Part 1 grievance form utilized by Davis to file Grievance 664288 informs inmates to "[r]efer to the DC-ADM 804 for procedures on the Inmate Grievance System. State your grievance in Block A in a brief an understandable manner. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted." (Doc. 226, at 14-15, Tr. of Trial, 14:9-15:4, May 23, 2022; Doc. 227, at 2). In addition, House testified that Section A of the form stated: "Provide a brief clear statement of your grievance. . . . State all relief that you are seeking." (Doc. 226, at 15, Tr. of Trial, 15:5-9, May 23, 2022; Doc. 227, at 2).

36. House testified that Grievance 664288 sought treatment for Davis's Hepatitis C and that there are no requests for compensation in Grievance 664288. (Doc. 226, at 15, Tr. of Trial, 15:12, May 23, 2022; Doc. 227, at 2).

37. House further testified that there are no requests for compensation in the initial filing of Grievance 664288. (Doc. 226, at 15, Tr. of Trial, 15:16-17, May 23, 2022; Doc. 227, at 2).

38. Offering is own testimony, Davis testified that there is no request for monetary damages in the initial filing of Grievance 664288. (Doc. 226, at 26, Tr. of Trial, 26:1-10, May 23, 2022).

39. Davis testified at the non-jury trial that DOC Defendants made representations that "thwarted" his ability to exhaust administrative remedies. (Doc. 226, at 26, Tr. of Trial, 26:11-24, May 23, 2022).

40. At the non-jury trial, Davis testified that DOC Defendants "thwarted" his ability to request monetary relief because DOC Defendants placed him under the impression that he did not have to request monetary damages because his request for Hepatitis C treatment would be sent to the Committee. (Doc. 226, at 28, Tr. of Trial, 28:17-23, May 23, 2022).

41. Davis testified that based on Rankin's response to Davis's DC-135A informal inmate request to staff letter, he was under the assumption that SCI-Fayette did not provide Hepatitis C treatment. (Doc. 226, at 22-23, Tr. of Trial, 22:18-23:14, May 23, 2022).

42. Davis testified that he decided to file Grievance 664288 in an attempt to determine who was on the Committee and formally request Hepatitis C treatment. (Doc. 226, at 23, Tr. of Trial, 23:15-21, May 23, 2022).

43. Davis explained that Grievance 664288 does not request monetary damages because he was under the assumption that "they w[ere] giving everybody the programs and all this stuff, and [he was] asking for just the treatment. . . ." (Doc. 226, at 30, Tr. of Trial, 30:6-13, May 23, 2022).

44. Davis testified that after Grievance 664288 was initially denied, he "realized that something else was going on, [he] started asking them for funds. [He] said if [he] get[s] hurt from what you all doing, [he] deserve[s] funds." (Doc. 226, at 33, Tr. of Trial, 33:4-6, May 23, 2022).

45. Davis sought monetary relief in each appeal of Grievance 664288 filed thereafter. (Doc. 227, at 6, 8).

46. Davis contends that DOC Defendants misled him by addressing Grievance 664288 on the merits "even after [Davis] mentioned the funds in the appeal to the Superintendent." (Doc. 226, at 27, Tr. of Trial, 27:5-20, May 23, 2022).

47. Davis argues that DOC Defendants should have rejected his grievance for failure to comply with DC-ADM 804, as opposed to denying it on the merits. (Doc. 221, at 8; Doc. 226, at 29, 31, Tr. of Trial, 29:18-23, 31:9-17, May 23, 2022).

48. Davis testified that "if [DOC Defendants] addressed it on the merits, all the way up until now . . . that exhaustion procedure is completed . . . ." (Doc. 226, at 31, Tr. of Trial, 31:12-13, May 23, 2022).

49. Davis argues that DOC Defendants' failed to raise the failure-to-exhaust defense until the motion to bifurcate was filed on February 7, 2022, four and a half years after Davis initiated this matter. (Doc. 5; Doc. 207; Doc. 226, at 30-31, Tr. of Trial, 30:23-31:8, May 23, 2022).

## CONCLUSIONS OF LAW

The Court has jurisdiction over the instant action under 28 U.S.C. § 1331. The Court has federal question jurisdiction over this action as Davis filed the complaint pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. (Doc. 112); 28 U.S.C. § 1331. Venue is proper in this Court as this suit has been brought in the district where the events giving rise to the claims occurred. 28 U.S.C. §§ 1391(b)(1), 1391(b)(2).

## I.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. In 1996, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e. The PLRA mandates that prisoners exhaust all available administrative remedies prior to initiation of a suit under § 1983 for deprivation of Constitutional rights. 42 U.S.C. § 1997e(a). Previously discretionary, the PLRA made unexhausted claims unreviewable by the District Courts. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Although exhaustion is mandatory under the PLRA, proper exhaustion is an affirmative defense that must be pleaded and proven by the defendant. *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002); *see also Ray v. Kertes*, 285 F.3d 295 (3d Cir. 2002).

2. Exhaustion is a precondition to a Section 1983 suit, constituting a "threshold question that *courts* must address to determine whether litigation is being conducting in the right forum at the right time." *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013)

(emphasis in original) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008) ); *cf. Wilkerson v. United States*, Civil Action No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination.") (addressing a prisoner's FTCA claim).

3. "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted). Therefore, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small*, 728 F.3d at 269.

4. The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray*, 285 F.3d at 295).

5. Once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him. *Rinaldi*, 904 F.3d at 268 (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).

6. Even where the relief sought is unavailable through administrative remedies, prisoners must pursue their claims through prison channels prior to initiation of litigation in federal courts. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Courts within the Third

Circuit and the Middle District have consistently imposed a procedural default component on the exhaustion requirement that requires inmates to "fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court." *McClintic v. Bickell*, No. 1:14-CV-2005, 2015 WL 4207229, *3 (M.D. Pa. July 10, 2015) (citing *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004)). "Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court." *McClintic*, 2015 WL 4207229, at *3 (citing *Spruill*, 372 F.3d 218). Indeed, an "untimely or otherwise procedurally defective administrative grievance" fails to satisfy the exhaustion requirement of the PLRA and the failure to properly "exhaust administrative remedies" is a bar to "filing suit in federal court." *See Woodford*, 548 U.S. at 83-84, 92.

7. The version of DC-ADM 804 in effect when Davis filed his initial grievance provides a three-step process, and an inmate must follow each of the steps in order to exhaust his administrative remedies under the PLRA. *See Booth v. Churner*, 206 F.3d 289 299, (3d Cir. 2000) (holding that plaintiff "did not take full advantage of the administrative procedures available to him" in failing to use steps two and three of DC-ADM 804); *see also Jackson v. Carter*, 813 F. App'x 820, 823 (3d Cir. 2020) ("The DOC has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA."). Grievances that are not properly submitted in accordance with DC-ADM 804 must be rejected, at which point the inmate may resubmit the grievance or appeal the rejection. *Freeman v.*

*Wetzel,* No. 2:17-CV-1506, 2020 WL 6730897, at *10 (W.D. Pa. Aug. 6, 2020), *report and recommendation adopted,* 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020).

8. DC-ADM 804 mandates that the grievance must include a statement of relevant facts, including the date, time, and location of events; the identities of any individuals involved; "any claims the inmate wishes to make concerning violations of DOC directives, regulations, court orders, or other law; and any compensation or legal relief desired." (Doc. 226, at 10, Tr. of Trial, 10:6-9, May 23, 2022). DC-ADM 804 specifically states: "If the inmate desires compensation or other legal relief normally available from a court, *the inmate must request the specific relief sought in his/her initial grievance.*" DC-ADM 804 § 1(A)(11)(d) (emphasis added); (Doc. 226, at 10, Tr. of Trial, 10:9-12, May 23, 2022).

9. The DC-804, Part 1 grievance form utilized by Davis to file Grievance 664288 informs inmates to refer to the DOC policy DC-ADM 804 for procedures on the inmate grievance system and to "[s]tate all relief that you are seeking." (Doc. 226, at 14-15, Tr. of Trial, 14:25-15:9, May 23, 2022; Doc. 227, at 2).

10. DOC Defendants assert that because Davis did not request monetary damages in his initial Grievance 664288, his request for monetary damages must be barred, which "effectively eliminates the need to proceed with the previously scheduled jury trial." (Doc. 225, at 16 n.3).

11. DOC Defendants bear the burden of proof on the exhaustion issue. *Rinaldi,* 904 F.3d at 268.

12. Though Davis has pursued other grievances to the final stage of appeal in the Pennsylvania DOC grievance process, Grievance 664288 is the only one related to this

action – treatment of Davis's Hepatitis C. (Doc. 226, at 11-14, Tr. of Trial, 11:18-14:2, May 23, 2022; Doc. 227, at 2).

13. Grievance 664288 does not contain any request for monetary damages or monetary relief. (Doc. 226, at 15, 26, Tr. of Trial, 15:16-17, 26:1-10, May 23, 2022; Doc. 227, at 2).

14. Since "[i]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion," a prisoner who fails to request monetary damages in the grievance process is barred from bringing a claim for monetary relief in federal court. *Smith v. Sec'y of Pa. Dep't of Corr.*, 747 F. App'x 101, 103 (3d Cir. 2018) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

15. In the absence of competent proof that Davis was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, the Court shall reject Davis's request for his failure to exhaust to be excused. *See Kendrick v. Hann*, No. 1:19-CV-01642, 2021 WL 2914986, at *5 (M.D. Pa. July 12, 2021).

## II. ADMINISTRATIVE REMEDIES WERE "UNAVAILABLE" TO DAVIS

16. "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi*, 904 F.3d at 268 (citing *Tuckel*, 660 F.3d at 1253-54).

17. "There is one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." *Downey v. Pa. Dept. of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Ross v. Blake*, 578 U.S. 632, 641 (2016)); *see also Johnson v.*

*Wireman*, 809 F. App'x 97, 100 (3d Cir. 2020) ("[A] prisoner need exhaust only available administrative remedies." (internal quotations omitted)).

18. Accordingly, the exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858-59. The Supreme Court has described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859.

19. First, the Court noted that "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

20. Second, the Court imagined an administrative scheme that "might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Ross*, 136 S. Ct. at 1859; *see Shifflett v. Korzniak*, 934 F.3d 356, 365 (3d. Cir. 2019). The Court explained that if an administrative process is "susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion;" however, if a remedy is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Ross*, 136 S. Ct. at 1859.

21. The third situation arises "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

22. Davis raises several arguments as to why his failure to include a request for monetary damages in the initial filing of Grievance 664288 should not bar compensatory relief in this action.[4]

23. First, Davis argues that "nothing in Grievance System Policy (Inmate Handbook, 2017 Edition) would have put [Davis] on notice that he had to ask for monetary damages – or any particular form of relief at all." (Doc. 221, at 5). Nevertheless, Davis avers that "there was substantial compliance by virtue [because] monetary relief/damages was sought on appeal." (Doc. 221, at 8). Davis submits:

> Assuming, arguendo, [Davis] was required to include monetary damages in the initial grievance, the Inmate Handbook, 2017 Edition impeded/thwarted him from doing do by the removal of that portion of the handbook, then stating:
>> "When DOC polities are changed you will be given notice of the change(s) and the most current policy will become effective, regardless of what information is in this handbook."

> (Doc. 221, at 7).

24. Davis may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).

---

[4] At the non-jury trial, Davis argued that his failure to request monetary damages should be excused under "vicarious exhaustion." (Doc. 226, at 35-36, Tr. of Trial, 35:19-36:1, May 23, 2022). Under the doctrine of vicarious exhaustion, "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement[,] when one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004)). In support of his argument, Davis relied on *Chimenti v. Wetzel*, No. 15-CV-3333, 2018 WL 3388305 (E.D. Pa. July 12, 2018). (Doc. 226, at 36-38, Tr. of Trial, 36:9-38:20, May 23, 2022).). In *Chimenti*, the action was filed on behalf of a class of inmates requesting injunctive, not monetary, relief in the form of Hepatitis C treatment. 2018 WL 3388305, at *6. Davis's reliance on *Chimenti* is misplaced because Davis is the only plaintiff in the present action, and Davis is seeking monetary damages on his own behalf. (Doc. 112). Therefore, the vicarious exhaustion doctrine does not apply in this case.

25. "[I]gnorance and confusion regarding the Pennsylvania DOC policies do[ ] not excuse failing to adhere to these requirements." *Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (granting summary judgment on exhaustion grounds when plaintiff failed to request monetary relief in his grievances) (quoting *Stokes v. Wenerowicz*, 2017 WL 3226863, at *4 (E.D. Pa. Jul. 31, 2017)).

26. At the non-jury trial, House offered testimony regarding the inmate handbook in Davis's possession when he filed Grievance 664288, which informed inmates that they are responsible for all policies that apply to them. (Doc. 226, at 7, Tr. of Trial, 7:20-23, May 23, 2022).

27. House testified that the initial grievance form of Grievance 664288 contains the following instruction:

> Refer to the DC-ADM 804 for procedures on the Inmate Grievance System. State your grievance in Block A in a brief and understandable manner. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted. [. . .] Provide a brief clear statement of your grievance. [. . .] *State all relief that you are seeking.*
>
> (Doc. 226, at 14-15, Tr. of Trial, 14:24-15:9, May 23, 2022; Doc. 227, at 2) (emphasis added).

28. Davis may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005); s*ee also, e.g.*, *Mack v. Klopotoski*, 540 F. App'x 108, 113 (3d Cir. 2013) (finding procedural default and rejecting inmate's substantial compliance argument because he failed to provide photocopies of grievances and responses when pursuing appeal as required by policy).

29. Davis's confusion regarding these grievances procedures does not, alone, excuse a
failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v.
Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance
of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt
filing.' " (citations omitted)).

30. Next, Davis testified at the non-jury trial that DOC Defendants made representations
that "thwarted" is ability to exhaust administrative remedies. (Doc. 226, at 26, Tr. of
Trial, 26:11-24, May 23, 2022).

31. To defeat a failure-to-exhaust defense based upon a prison official's misrepresentation,
the Third Circuit established that:

> an inmate must show (1) that the misrepresentation is one which a
> reasonable inmate would be entitled to rely on and sufficiently
> misleading to interfere with a reasonable inmate's use of the grievance
> process, and (2) that the inmate was actually misled by the
> misrepresentation.
>
> *Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

32. In *Hardy*, the Third Circuit adopted a two-part test to determine whether a
misrepresentation by a prison official thwarted an inmate's use of the grievance
process.

> As an objective matter, taking account of the speaker and context, the
> instruction must be of the sort that a reasonable inmate would be
> "entitled to rely on," even though it is "at odds with the wording" of the
> grievance process. *Brown* [*v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002)];
> *see also Davis* [*v. Fernandez*, 798 F.3d 290, 296 (5th Cir. 2015)] (finding
> "no reason that [the inmate] should not be entitled to rely on the
> representations of his jailers"). It also must be so misleading to a
> reasonable inmate as to interfere with his use of the grievance
> process . . . .
>
> As a subjective matter, the inmate must persuade the district court that
> he in fact did rely on the misrepresentation to his detriment. As in the

threat context, *Rinaldi*, 904 F.3d at 268-69, objectively misleading instructions can be circumstantial evidence that an inmate's use of the grievance process has been thwarted, but a further showing—such as "documents, affidavits, or live testimony if deemed warranted," *id.* at 269—will typically be required. And in any event, that circumstantial evidence can be overcome by evidence that an inmate actually knew how to navigate the grievance process despite the misleading instructions. *Id.*; *cf. Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable.").

*Hardy*, 959 F.3d at 587-88.

33. Davis satisfies the first, objective prong because DOC Defendants engaged in conduct was "sufficiently misleading to interfere with a reasonable inmate's use of the grievance system." *Hardy*, 959 F.3d at 588.

34. At the non-jury trial, Davis testified that DOC Defendants "thwarted" his ability to request monetary relief because DOC Defendants placed him under the impression that he did not have to request monetary damages because his request for Hepatitis C treatment would be sent to the Committee. (Doc. 226, at 28, Tr. of Trial, 28:17-23, May 23, 2022).

35. Davis testified that based on Rankin's response to Davis's DC-135A informal inmate request to staff letter, he was under the assumption that SCI-Fayette did not provide Hepatitis C treatment. (Doc. 226, at 22-23, Tr. of Trial, 22:18-23:14, May 23, 2022).

36. Davis testified that he decided to file Grievance 664288 in an attempt to determine who was on the Committee and formally request Hepatitis C treatment. (Doc. 226, at 23, Tr. of Trial, 23:15-21, May 23, 2022).

37. Davis explained that Grievance 664288 does not request monetary damages because he was under the assumption that "they w[ere] giving everybody the programs and all

this stuff, and [he was] asking for just the treatment. . . ." (Doc. 226, at 30, Tr. of Trial, 30:6-13, May 23, 2022).

38. However, after Grievance 664288 was initially denied, Davis testified: he "realized that something else was going on, [he] started asking them for funds. [He] said if [he] get[s] hurt from what you all doing, [he] deserve[s] funds." (Doc. 226, at 33, Tr. of Trial, 33:4-6, May 23, 2022).

39. Davis sought monetary relief in each appeal of Grievance 664288 filed thereafter. (Doc. 226, at 27, Tr. of Trial, 27:1-11, May 23, 2022).

40. Davis contends that DOC Defendants misled him by addressing Grievance 664288 on the merits "even after [Davis] mentioned the funds in the appeal to the Superintendent." (Doc. 226, at 27, Tr. of Trial, 27:5-20, May 23, 2022).

41. Davis testified that "if [DOC Defendants] addressed it on the merits, all the way up until now . . . that exhaustion procedure is completed . . . ." (Doc. 226, at 31, Tr. of Trial, 31:12-13, May 23, 2022).

42. Davis argues that DOC Defendants' failed to raise the failure-to-exhaust defense until the motion to bifurcate was filed on February 7, 2022, four and a half years after Davis initiated this matter. (Doc. 5; Doc. 207; Doc. 226, at 30-31, Tr. of Trial, 30:23-31:8, May 23, 2022).

43. Based on the DOC's representations regarding the existence of the Committee and a Court Order that inmates should receive Hepatitis C treatment, a reasonable inmate could have concluded that no additional relief must be requested if the only relief sought is treatment even though it is "at odds with the wording" of the grievance process. *Hardy*, 959 F.3d at 587-88.

44. Furthermore, based on DOC Defendants' representations regarding ongoing administrative action in response to Grievance 664288 and the present action, a reasonable inmate could have concluded that no further action was required to pursue his grievance – particularly given that Davis actively pursued monetary relief in all subsequent filings. *Hardy*, 959 F.3d at 587-88; *see Freeman*, 2020 WL 6730897, at *10 (finding that prisoner satisfied the *Hardy* test where he was repeatedly advised by DOC officials that the investigation of his attack was ongoing).

45. Davis also satisfies the second, subjective prong because there is sufficient evidence to establish that Davis was actually misled by DOC Defendants' representations. *See Hardy*, 959 F.3d at 587-88.

46. DOC Defendants argue that Davis was not actually misled by their representations regarding the grievance process because Davis filed prior grievances in which he properly requested compensation in the initial grievances. (Doc. 225, at 9). DOC Defendants argue that there is sufficient evidence to establish Davis "knew how to navigate the grievance process and had properly done so on a number of prior occasions." (Doc. 225, at 10).

47. At the non-jury trial, Davis testified that the response from Rankin on behalf of Superintendent Lane misled him by indicating that the Committee was responsible with deciding which inmates receive Hepatitis C treatment. (Doc. 226, at 22-23, Tr. of Trial, 22:18-23:14, May 23, 2022).

48. Davis explained that he did not initially seek compensation because he was under the assumption that the Committee would grant him medical attention as required by the decree of Judge Mariani. (Doc. 226, at 22-23, Tr. of Trial, 22:18-23:14, May 23, 2022).

49. However, after Grievance 664288 was initially denied and failed to identify the members of the Committee, Davis testified that DOC Defendants thwarted his ability to exhaust all "available" administrative remedies. (Doc. 226, at 30, Tr. of Trial, 30:6-13, May 23, 2022).

50. Thereafter, Davis sought monetary relief in every appeal of Grievance 664288. (Doc. 226, at 27, Tr. of Trial, 27:1-11, May 23, 2022).

51. Accordingly, Davis did in fact rely on DOC Defendants' misrepresentations to Davis's detriment. *See Hardy*, 959 F.3d at 587-88.

52. In addition, Davis testified that DOC Defendants' actions misled him by addressing Grievance 664288 on the merits through various appeals without raising a challenge to Davis requesting monetary relief in his appeals. (Doc. 226, at 27, 29, Tr. of Trial, 27:12-20, 29:18-23, May 23, 2022).

53. Davis argues that DOC Defendants should have rejected his grievance for failure to comply with DC-ADM 804, as opposed to denying it on the merits. (Doc. 221, at 8; Doc. 226, at 29, 31, Tr. of Trial, 29:18-23, 31:9-17, May 23, 2022).

54. Davis testified that "if [DOC Defendants] addressed it on the merits, all the way up until now . . . that exhaustion procedure is completed . . . ." (Doc. 226, at 31, Tr. of Trial, 31:12-13, May 23, 2022).

55. Davis has satisfied both the objective and subjective prongs of the test articulated by the Third Circuit in *Hardy*, 959 F.3d at 587-88.

56. DOC Defendants' misleading conduct rendered the PLRA exhaustion of administrative remedies process "unavailable" to Davis. *See Hardy*, 959 F.3d at 587-88; *see also Ross*, 136 S. Ct. at 1859.

57. Davis has met the required burden to defeat the failure-to-exhaust defense raised by DOC Defendants. *See Rinaldi*, 904 F.3d at 268.

58. A genuine issue of material fact exists as to whether the DOC Defendants provided misleading information to Davis that rendered the grievance process "unavailable" to him. *See Millhouse v. United States,* No. 1:19-CV-00665, 2021 WL 2412930, at *11 (M.D. Pa. June 14, 2021) (finding that genuine issue of fact existed as to whether grievance process was rendered unavailable to plaintiff); *Freeman*, 2020 WL 6730897, at *10.

59. The Court declines to grant summary judgment on the basis of failure to exhaust administrative remedies.

60. Davis's request for monetary damages is not barred.

## CONCLUSION

For the foregoing reasons, the Court concludes that Davis's request for monetary damages is not barred. (Doc. 112, at 12). Accordingly, DOC Defendants' request for summary judgment on the basis of failure to exhaust administrative remedies is **DENIED**. (Doc. 207; Doc. 225).

An appropriate Order follows.

BY THE COURT:

Dated: July 6, 2022

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**